**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Diana Vara, Amanda Wilson, Noemy Santiago, Kennya Cabrera, and Indrani Manoo, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>Elisabeth P. DeVos, in her official capacity as Secretary of the United States Department of Education, and the United States Department of Education,<br>Defendants. | Civil Action No. 19-12175-LTS |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR JUDGMENT**

This lawsuit challenges action taken by Defendants, who are the Department of Education (Education) and the Secretary of Education, regarding a request submitted by the Massachusetts Attorney General's Office (the AGO) to Education in November 2015. In the request, the AGO asked Defendants to, among other things, cancel the federal student loan debts of 7,241, borrowers. In January 2016, Defendants informed the AGO in writing that they needed additional information and would work towards providing a fair, transparent, and efficient process for debt relief for Massachusetts students. Subsequently, Defendants simplified the process by which borrowers could apply for relief, revised their regulations, and placed the 30 signed claims submitted by the AGO into a queue for adjudication.

Now, four years later, Plaintiffs ask this Court to hold that Defendants acted arbitrarily and capriciously by not granting all the relief requested by the AGO and to declare, among other things, that 7,241, borrowers have established a defense to repayment of their student loans. This Court should decline. *First,* judicial review under the Administrative Procedure Act (APA) is unavailable because the Secretary's decision to not initiate a process to determine whether a particular group of borrowers has a borrower defense is committed to her discretion as a matter of law, and there is no law for the Court to apply in reviewing that decision. *Second*, the APA did not require a formal, reasoned decision here because the challenged action did not result from an "Agency Proceeding." *Third*, even if the APA required reasons, Plaintiffs' remedy would be a remand rather than a declaration that would be prohibited by the anti-injunction provision of the Higher Education Act. And in no event would the Court be authorized to order full loan discharges on behalf of all Plaintiffs, a result that is not, contrary to Plaintiffs' view, either required by the governing borrower defense regulation or appropriate under the APA. *Fourth*, Defendants' action is supported by the record before this Court. Defendants placed the 30 signed claims in the queue for adjudication, revised their regulations, revamped their procedures, and created new protections for borrowers. Allowing Plaintiffs and their proposed class to jump ahead of all of existing claimants without having followed the same rules would be arbitrary and capricious.

## Background

### 1. Federal law requires the Secretary to engage in collection efforts if a borrower defaults on a Direct Loan.

This case concerns the William D. Ford Federal Direct Loan Program, which is authorized under the Higher Education Act of 1965. 20 U.S.C. § 1087a. Under this program, students can receive loans from the federal government (Direct Loans) to pay for educational expenses. *Id.* Generally, students must repay such loans. *Id.* § 1087e(d); 34 C.F.R. § 685.207(a).

"The head of an executive . . . agency," such as the Secretary, "shall try to collect" any "claim" of the United States "arising out of the activities of, or referred to, the agency." 31 U.S.C. § 3711(a)(1). A "'claim'" or "'debt'" is "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States." *Id.* § 3701(b)(1). So long as she follows certain procedural requirements, the Secretary can collect Education's debts through various tools, including administrative offset of federal nontax and tax refund payments and wage garnishment. 31 U.S.C. §§ 3716(c)(6), 3720A, 3720D.

### 2. Under 34 C.F.R. § 685.206(c)(1995 ed.), borrowers could raise a defense to repayment in a collection proceeding.

The Higher Education Act requires the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment" of a Direct Loan. 20 U.S.C. § 1087e(h). Under such authority, the Secretary promulgated 34 C.F.R.

§ 685.206(c) (effective 1995) to allow a borrower to assert a defense to repayment in a collection proceeding. The regulation codified the Secretary's "long-standing authority to relieve the borrower of his or her obligation to repay a loan on the basis of an act or omission of the borrower's school." Federal Direct Student Loan Program, Notice of Proposed Rulemaking, 59 Fed. Reg. 42,646, 42,649 (Aug. 18, 1994).

Until October 16, 2018, the regulation in pertinent part read as follows:

> (c) Borrower defenses.
>
> (1) In any proceeding to collect on a Direct Loan, the borrower may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law. These proceedings include, but are not limited to, the following:
>
> (i) Tax refund offset proceedings under 34 CFR 30.33.
>
> (ii) Wage garnishment proceedings under section 488A of the Act.
>
> (iii) Salary offset proceedings for Federal employees under 34 CFR part 31.

34 C.F.R. § 685.206(c) (1995 ed.). The regulation further provided:

> If the borrower's defense against repayment is successful, the Secretary notifies the borrower that the borrower is relieved of the obligation to repay all or part of the loan and associated costs and fees that the borrower would otherwise be obligated to pay. The Secretary affords the borrower such further relief as the Secretary determines is appropriate under the circumstances.

*Id.* § 685.206(c)(2) (1995 ed.).

**3. Following the collapse of Corinthian Colleges, Education simplified its borrower defense application process and revised its regulations.**

Corinthian Colleges, Inc. (Corinthian) was a company that operated postsecondary schools across the country. Stipulations of Fact (ECF No. 33) at ¶ 1. In 2015, Corinthian filed for bankruptcy. *Id.* ¶ 5.

Between 1995 and 2015, the borrower defense regulation was "rarely used." 81 Fed. Reg. 39,330, 39,330 (June 16, 2016). But when Corinthian collapsed, Education received "a flood of borrower defense claims submitted by Corinthian students." *Id.* In response, Education in 2016 published information on its website to educate borrowers on the availability of relief. *See* ECF No. 33, ¶ 7. Because many of these claims were based on allegations that Corinthian misrepresented its job placement rates, Education created attestation forms so that applicants could verify the programs attended and certify that they relied on promotional materials and other information regarding job placement rates and the quality of education provided by the schools. *See id.* ¶ 8. By 2019, Education had received about 290,000, claims. https://www.ed.gov/sites/default/files/documents/borrower-defense-relief.pdf (December 10, 2019, Policy Statement) (accessed February 28, 2020).

Education also promulgated a new borrower defense regulation in 2016 that ultimately took effect in October 2018. *See* 81 Fed. Reg. 75,926-01 (Nov. 1, 2016). The new regulation created a factfinding process for reviewing applications and stated that the Secretary, upon consideration of certain

factors, "may initiate a process to determine whether a group of borrowers, identified by the Secretary, has a borrower defense." 34 C.F.R. §§ 685.222(e), (f)(1). This new regulation, like the previously effective 1995 regulation, provides for consideration of, in the first instance, whether a given borrower defense claimant asserts sufficient "acts or omissions," 20 U.S.C. § 1087e(h), on the part of the school to establish a defense to repayment and second, if so, the appropriate relief. Neither regulation sets forth any particular measure for the Secretary to calculate the relief to award successful claimants.

By November 12, 2019, Education had resolved about 65,000 claims. ECF No. 33 at ¶ 9. And in December 2019, Education announced, consistent with its authority under the Higher Education Act, a new methodology for awarding relief to successful borrower defense claimants based on the harm such claimants suffer and the educational value they receive. *Id.* ¶ 10.

**4. In 2015, the AGO asked Education to discharge 7,241, loans.**

In November 2015, the AGO sent a defense to repayment request (the DTR Submission) that asked Education to cancel federal student loan debt incurred by 7, 241, Massachusetts students who attended Corinthian. ECF No. 33 at ¶ 11 & Ex. 5. Exhibit 3 to the DTR Submission contained applications signed by 30 former Corinthian students, none of whom are the named Plaintiffs in this lawsuit. *Id.* ¶ 12 & Ex. 6. Exhibit 4 to the DTR Submission contained the names, dates of enrollment, contact information,

and programs attended of 7,241 students. *Id.* ¶ 13. The names of the five Plaintiffs are in Exhibit 4. *Id.* at ¶¶ 33, 35, 38, 41, 44.

On January 8, 2016, Education responded to the DTR Submission. ECF No. 33 at ¶ 14. In its response, Education acknowledged reviewing the DTR Submission and noted that "some evidence referred to in those documents was not included." *Id.* ¶ 15 & Ex. 7. Education conveyed its concerns to the AGO, asked the AGO to provide calculations and corroborating documentation, and stated it would work towards providing a fair, transparent, and efficient process for debt relief to help Massachusetts students. *Id.* Subsequently, Education forwarded the 30 individual applications attached to the DTR Submission to its borrower defense unit for adjudication. *Id.* at ¶ 16.

**5. In this lawsuit, Plaintiffs challenge Defendants' January 8, 2016, response to the AGO's November 2015 request.**

Plaintiffs allege that Defendants "violated the APA . . . by rejecting the" DTR Submission "as establishing a borrower defense for each" person listed on Exhibit 4 "without issuing a reasoned determination on the merits of the application." ECF No. 28 at 27-28 (¶ 160). They ask the Court to "find unlawful and set aside [Education's] final agency action rejecting the borrower defense application of the AGO on behalf of every individual listed on Exhibit 4, without ever rendering a reasoned decision on the merits." *Id.* at 29 (¶ 170). Plaintiffs also "seek a declaration . . . that they have successfully issued a defense to the repayment of all federal student loans associated with" Corinthian in Massachusetts. *Id.* (¶ 172).

## Argument

### I. *Williams* must be viewed in the light of its holding, which concerned exhaustion and certification of loans for collection.

Plaintiffs' arguments center on what this Court said in its Order on Motions for Judgment in *Williams v. DeVos*, 2018 WL 5281741 (D. Mass. Oct. 24, 2018). To support their argument that Education acted arbitrarily or capriciously, Plaintiff contend, among other things, that: 1) *Williams* "held that the [DTR Submission] was valid," ECF No. 38 at 3;[1] 2) *Williams* "decided" that the DTR Submission "represents a valid borrower defense application on behalf of all former Corinthian students named therein," *id.* at 11; and 3) Education "refused to comply with the judgment of validity on the [DTR Submission] with respect to anyone other than the two plaintiffs," *id.* at 3. But *Williams* did not hold that DTR Submission was an application in its own right.

*Williams* involved two former Corinthian students whose loans had been referred to debt collection *before* the AGO sent the DTR Submission to Education. 2018 WL 5281741, *1-2. The collection notices did not reference the borrower defense regulation but did note that they could seek review. *Id.* at *3. Neither plaintiff sought review by the October 2015 deadlines. *Id.*

On November 30, 2015, the AGO sent the DTR Submission to Education. *Williams*, 2018 WL 5281741,* 4. The DTR Submission listed the *Williams* plaintiffs' names on Exhibit 4. *Id.* On December 9, 2015, Education certified

[1] Citations to ECF filings are to the header of the document.

*Williams* plaintiffs' debts to the Treasury. *Id.* at *6. On January 8, 2016, Education sent the AGO a letter regarding the DTR Submission. *Id.* In April and May 2016, Education seized the *Williams* plaintiffs' tax refunds. *Id.* In June 2016, one plaintiff filed a borrower defense claim. *Id.* In October 2016, Education suspended collection activity on the debt of the *Williams* plaintiff who had applied for relief. *Id.*

In late 2016, the *Williams* plaintiffs sued the Secretary on behalf of themselves and others similarly situated, "alleg[ing]" that the Secretary "improperly certified [their] student loan debts . . . as legally enforceable." *Williams*, 2018 WL 5281741, *1. The Secretary moved to dismiss on the grounds of exhaustion, ripeness, and inability to represent a class; the plaintiffs opposed; and the AGO filed an amicus brief. *Id.* The "Court allowed the Secretary's motion insofar as the [plaintiffs] sought injunctive relief on behalf of persons other than [themselves]." *Id.* A record was filed, and the parties briefed the issues of exhaustion, mootness, ripeness, and the validity of the Secretary's decision to certify the plaintiffs' debts. *See id.* at *8-15.

In her merits brief, the Secretary maintained that the *Williams* plaintiffs could not seek judicial review of the certification decisions because they did not exhaust their remedies. *Williams*, 2018 WL 5281741, *10. The Court disagreed, reasoning that "no statute or regulation required the plaintiffs" to exhaust. *Id.* The Court went further and included the following language on which Plaintiffs rely heavily: "Even if [the plaintiffs] had been

required to exhaust, the Court finds that any such requirement would have been satisfied by [the DTR Submission], which invoked the administrative remedy of Education's review process such that Education was required to adjudicate the request, and the Secretary's subsequent decision to certify the plaintiffs' debts for collection." *Id.* The Court ultimately found that the DTR Submission "was sufficient to require the Secretary to determine the validity of the *plaintiffs'* borrower defense*,"* and that "[i]f any exhaustion requirement applied, it was [] met by [the DTR Submission]." *Id.* at *12 (emphasis added).

The Court then defined the issue in that case as whether Education's decision to certify and seize Plaintiffs' debts *after* receiving the DTR Submission was arbitrary or capricious and held that it was. *Williams*, 2018 WL 5281741, *12-15. The Court based its conclusion on, among other things, the fact that "the Secretary did not consider" the "DTR [S]ubmission in her decision to certify the plaintiffs' debts." *Id.* at * 13.

Contrary to Plaintiff's contention, the Court in *Williams* did not order the Secretary to decide the claims of borrowers other than the named plaintiffs. *Williams*, 2018 WL 5281741, *1. As noted above, the Court "allowed the Secretary's motion [to dismiss] insofar as the [plaintiffs] sought injunctive relief on behalf of persons other than [themselves]." *Id.* For such reasons, *Williams* simply does not support Plaintiffs' contention, articulated at ECF 38 at 3, that the Secretary "refused to comply with the judgment of validity on the [DTR Submission]."

## II. Judicial review of Plaintiffs' APA claim is unavailable because the challenged action is committed to the Department's discretion as a matter of law and there is no law for the Court to apply in reviewing that decision.

To the extent Plaintiffs claim that Defendants erred by not initiating a process to determine whether the seven thousand borrowers listed in the DTR Submission had a borrower defense claim, they do not have a right to review of that claim. Such action is committed to Defendants' discretion as a matter of law, and there is no law for the Court to apply in evaluating Defendants' action. *See* Civil Action No. 19-12177-LTS at ECF No. 18 at 14-16.[2]

## III. The APA at 5 U.S.C. § 555(e) did not require a statement of reasons because there was no "Agency Proceeding."

Plaintiffs contend that the APA at 5 U.S.C. § 555(e) "obligate[s]" Education "to render a reasoned decision on the [the] DTR [S]ubmission." ECF No. 38 at 15 (italics removed). But the APA provision they cite applies only to actions that result from an "Agency Proceeding," which the APA defines as rule making, adjudication, or licensing. 5 U.S.C. §§ 551(5), (7), (9), (12). None of those categories apply here.

The DTR Submission did not ask Defendants to engage in rulemaking, which is an "agency process for formulating, amending, or repealing a rule." 5 U.S.C. § 551(5). Nor did it involve licensing. *See id.* at § 551(9). And Education's action on the DTR Submission—which included asking for follow-

---

[2] The Court at a status conference in January 2020 instructed the parties to incorporate arguments made in other briefs by reference where appropriate.

up information—does not squarely fit in the APA definition of "adjudication," which is "agency process for the formulation of an order." 5 U.S.C. § 551(7). As the Supreme Court once observed, "certain types of agency action are neither rule making nor adjudication." *Int'l Tel. & Tel. Corp. Communications Equipment and Systems Div. v. Local 134, Intern. Broth. Of Elec. Workers, AFL-CIO*, 419 U.S. 428, 441-445 (1975) (holding investigatory proceeding under labor relations statute was not an adjudication). As mentioned above, at the time Defendants received the DTR Submission, the plain text of the regulation did not contemplate group submissions.[3]

Indeed, in 2015, when Defendants received the DTR Submission, the regulation read:

> In any proceeding to collect on a Direct Loan, the borrower may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law.

34 C.F.R. § 685.206(c) (1995 ed.). And the AGO did not have the authority to create such an obligation for the Defendants simply by asking for something. After receiving the DTR Submission, however, the Secretary promulgated a regulation that provides for a group discharge process. *See* 34 C.F.R. § 685.222(f). But neither Plaintiffs nor the AGO have asked the Secretary to consider the DTR Submission under that new provision.

[3] Defendants sent the 30 applications in Exhibit 3 to its borrower defense unit for adjudication. Plaintiffs do not challenge that aspect of the response.

Defendants recognize that this Court "agree[d]" with the *Williams* plaintiffs that the DTR Submission "constituted a borrower defense application that was pending before the Secretary at the time of her certification decision" and rejected the Secretary's argument that "federal law allows only the borrower herself to make an individual application." 2018 WL 5281741, *10-11. But such statements appear to be dicta, as the Court did not hold that the Secretary had to decide the claims of anyone but the plaintiffs. The Court also did not order the Secretary to discharge the debts of the *Williams* plaintiffs or reverse the certification decisions. Instead, the Court "REMAND[ED the] matter to the Secretary for redetermination of her certification decision." 2018 WL 5281741, *15.

In sum, the DTR Submission could not have triggered an agency process for formulation of an order, because at the time, such process did not exist for group submissions. And Plaintiffs cannot establish such context with respect to all 7, 241, individuals listed in Exhibit 4. For that reason, the Court's ruling in *Williams* does not support Plaintiffs' claims, and Defendants' actions regarding the DTR Submission do not constitute an adjudication or other Agency Proceeding that would have required a statement of reasons.

## IV. If the APA required a statement of reasons from the Defendants, Plaintiffs' remedy would be a remand.

If the Court decides that Defendants had to provide a statement of reasons to support their action regarding the DTR Submission, Plaintiffs' remedy under the APA would be a remand. As the First Circuit has observed:

> Under well-settled principles of administrative law, we must accept or reject the agency's decision based on the rationale the agency provides. While alternative grounds for affirming the agency's decision may be evident in the record, a court may not substitute its own rationale to justify the agency's conclusion. Thus, the proper way to handle an agency error in the ordinary circumstance is to remand to the agency for additional investigation or explanation. This principle is known as the ordinary remand rule.

*Boliero v. Holder*, 731 F.3d 32, 38 (1st Cir. 2013) (cleaned up).

By characterizing their claim as one for relief under the Declaratory Judgment Act, Plaintiffs appear to be trying to circumvent the ordinary remand rule. But they do not cite a single case that permitted a litigant to get around the rule that way. In *Williams*, for example, the Court issued declaratory relief on an issue *and* remanded the matter.

In any event, as Defendants argued in their motion to dismiss the AGO's lawsuit, *see* Civil Action No. 19-12177-LTS, ECF No. 18 at 16-19, and in a reply brief in *Williams*, *see* Civil Action No. 16-11949-LTS, ECF No. 26 at 15, the Higher Education Act's anti-injunction provision prevents the Court from granting declaratory relief that functions as injunctive relief. Defendants incorporate the arguments made in those briefs here. Put another way, the relief requested—complete discharge—is simply not available here.

Plaintiffs' requested relief is also inappropriate because that "[s]tate law provides the basis for borrower defense for all federal loans at issue in this case," ECF No. 38 at 18 (citing 34 C.F.R. § 685.206(c) (1995 ed.)), does not mean that a full discharge is warranted. The regulation incorporates state law to define the "act[s] or omission[s] of the school" that a borrower can assert as a

defense to repayment but then grants the Secretary discretion to relieve the borrower of "all or part of the loan" and afford "such further relief as the Secretary determines is appropriate." 34 C.F.R. § 685.206(c)(2) (eff. until Oct. 16, 2018). In other words, state law creates "the *right* to relief, but the federal statute and regulations creating the borrower defense do not rely upon state law to create the *type or amount* of relief." *California v. U.S. Dep't of Educ.*, 2018 WL 10345668, at *10 (N.D. Cal. June 27, 2018) (emphasis in original). "Thus, the regulation at issue gives the Secretary discretion to determine the amount of relief, not tethered to state law." *Id.*; *see also Calvillo Manriquez v. DeVos*, 345 F. Supp. 3d 1077, 1103 (N.D. Cal. 2018) (finding that Education's 1995 borrower defense regulation "does not reference state law" in "addressing the amount or type of relief" and that "there is no question that the Secretary has the power to determine the amount of relief a borrower [who has asserted a successful borrower defense] can obtain").

Consistent with this authority, the Secretary recently developed a new relief methodology that provides successful borrower defense applicants a loan discharge that is proportionate to the harm suffered as a result of the school's misconduct, as measured by a comparison of earnings data between the borrower's program and comparator programs. https://www.ed.gov/sites/default/files/documents/borrower-defense-relief.pdf (accessed February 28, 2020). Like a previous relief methodology that also relied on comparative earnings data to determine borrower defense relief, this

"attempt to create a policy to determine whether students obtained value, and if so, how much, is . . . a legitimate exercise of the Secretary's discretion under the Higher Education Act." *Calvillo Manriquez*, 345 F. Supp. 3d at 1103.

In light of this regulatory scheme, Plaintiffs' discussion of the relief that is available under the Massachusetts Consumer Protection Act, *see* ECF No. 38 at 18-21, is irrelevant. Even if the Court determines that Education should have issued a reasoned decision regarding the DTR Submission, the Court would have no basis for further concluding that Education has to provide full loan discharges and restitution. Such relief is in any event is not contemplated by the APA, which states only that the court shall "set aside" agency action. 5 U.S.C. § 706(2). As discussed above, the appropriate remedy (should the Court determine one is necessary) would be a remand. *E.g., Williams*, 2018 WL 5281741, * 15 ("'When an agency has not considered all relevant factors, the reviewing court ordinarily should remand to the agency.'") (quoting *Seavey v. Barnhart*, 276 F.3d 1, 12 (1st Cir. 2001).

## V. If the Court concludes that a remand is unwarranted, Defendants' action is supported by the record before this Court and is not arbitrary, capricious, or illegal.

"[A]n agency action is arbitrary and capricious only if the agency relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise." *Cowels v. Federal Bureau of Investigation*,

936 F.3d 62, 64 (1st Cir. 2019), *cert. denied*, --- S.Ct. ----, 2020 WL 871775 (Feb. 24, 2020) (cleaned up) (affirming decision to not upload DNA in a national database where record showed insufficient connection between sample and crime). Plaintiffs claim that Defendants violated the APA by acting arbitrarily or capriciously. *See* ECF No. 38 at 18-21. But they do not meet their burden to prove that Defendants' action was not "supported by any rational view of the record." *Id.* (cleaned up); *see Neighborhood Ass'n of The Back Bay, Inc. v. Federal Transit Admin.*, 407 F. Supp. 2d 323, 331 & n.28 (D. Mass. 2005) ("The party challenging an agency's decision bears the burden of establishing that the agency acted arbitrarily or capriciously or otherwise abused its discretion.") (cleaned up).

To support their motion for judgment in *Williams*, Defendants argued, among other things, that the DTR Submission did not provide information for the individuals listed in Exhibit 4 that would suffice to stop certification or offset. Civil Action No. 16-11949-LTS, ECF No. 81 at 14-18 (Argument II (A)(3)). Notably, Defendants in that filing addressed the differences between the ACI matter and the Corinthian matter. *See id.*; *cf.* ECF No. 38 at 13 (relying on Defendants' grant of "a similar group application submitted by the AGO several months after the" the DTR Submission to argue that Defendants have acted arbitrarily or capriciously). Defendants incorporate those arguments into this brief and note that *Williams* did not reject those specific arguments or conclude that Education should have granted the relief

requested by the AGO for the people listed in Exhibit 4 to the DTR Submission because of the action it took regarding the ACI matter.

Defendants' actions regarding the DTR Submission are supported by a "rational view of the record." *Cowels*, 936 F.3d at 67-68. As Defendants noted in their January 8, 2016, letter, the DTR Submission was missing information that Defendants needed to evaluate it. Moreover, at the time Defendants received the DTR Submission, the AGO had not yet obtained a judgment from the state court against Corinthian. Despite not having that information, Defendants put the 30 applications, which contained signed statements from the borrowers, into a queue for adjudication. And by the time the AGO provided follow up information and obtained a judgment, Defendants had simplified their procedures and created forms for borrowers to fill out. To date, about 290,000, people have applied for relief.

Indeed, four of the five Plaintiffs availed themselves of those processes and protections; Plaintiffs Vara, Wilson, Manoo, and Cabrera all filed individual applications and collections were stopped; and when Plaintiff Santiago was added to this lawsuit, Defendants sent her a letter advising her that they considered a defense to have been invoked and to send information to complete her application. ECF No. 34 at 6 (¶ 20); ECF No. 38-1. Notably, Plaintiffs have not identified a single person listed in Exhibit 4 to the DTR Submission who filed an application and was denied relief.

Much has changed since the AGO sent the DTR Submission to Education. After being flooded by claims following the collapse of Corinthian, Education devoted significant resources to create a process that was fair to borrowers across the country, enacted protections for those borrowers, and developed processes to adjudicate all of the claims. These efforts occurred under two separate administrations and continue today.

At bottom, Plaintiffs ask the Court to order Defendants to use their discretion and resources in a specific way. This Court should decline. While Plaintiffs and the AGO may honestly believe that Defendants should have reacted differently to the DTR Submission, the AGO cannot create an obligation for a federal agency that does not otherwise exist simply by sending Education a request.

Moreover, according to the materials submitted by the AGO, which included a judgment of $67 million and a representation that Corinthian schools in Massachusetts obtained about 90% of their revenues from federal loans, the United States may have been on the hook for tens of millions of dollars had it granted all the relief sought in DTR Submission. Defendants had good reason to require a sworn statement or attestation from the individual borrower before essentially cancelling a debt and refunding money.

**Conclusion**

For the reasons stated and on the authorities cited in this memorandum of law, as well as in the previously-filed briefs that have been incorporated by reference into this one, the Court should deny Plaintiffs' motion for judgment and either dismiss the Second Amended Complaint for lack of jurisdiction or enter judgment affirming the action taken by Defendants.

Respectfully submitted,

Elisabeth P. DeVos, in her official capacity as Secretary of the United States Department of Education, and the United States Department of Education

By their attorney,

Andrew E. Lelling
United States Attorney

/s/ *Annapurna Balakrishna*
Annapurna Balakrishna
Assistant United States Attorney
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
annapurna.balakrishna@usdoj.gov

February 28, 2020