UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DIANA VARA, AMANDA WILSON, NOEMY SANTIAGO, KENNYA CABRERA, and INDRANI MANOO, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ELISABETH P. DEVOS, in her official capacity as Secretary of the United States Department of Education,<br><br>and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>    Defendants. | Civil Action No. 19-12175-LTS |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING APPEAL**

For the second time, this Court has ordered the Department of Education ("ED") to make a reasoned decision in connection with the defense to repayment application ("DTR") submitted by the Massachusetts Attorney General's Office ("AGO") on behalf of local Corinthian Colleges borrowers nearly five years ago, and for the second time, ED seeks to evade the Court's order.[1]

---

[1] In Williams v. DeVos, the Court ordered ED to render a decision on the DTR with respect to just *two* borrowers within 60 days. See No. 16-11949-LTS, 2018 WL 5281741, at *15 (D. Mass. Oct. 24, 2018). ED failed to comply. At a status conference held on February 5, 2019—over 90 days after the Court's order—ED acknowledged that it had not yet set a timetable to take any action in accordance with that order. See No. 16-11949-LTS, ECF 110 (Transcript of Proceedings) ("THE COURT: I set a timetable, and what I understand Ms. Driscoll to have said is that her client didn't finish it in the 60 days and doesn't know when it will. . . . MS. DRISCOLL: That's correct, your Honor."); see also Vara v. DeVos, No. 19-12175-LTS, 2020

1

Now, ED seeks a stay of this Court's unambiguous June 25, 2020 order to "issue [a] reasoned decision within 60 days" on the DTR affording relief to Plaintiffs. Vara v. DeVos, No. 19-12175-LTS, 2020 WL 3489679, at *35 (D. Mass. June 25, 2020).

ED cannot satisfy any of the legal criteria for the issuance of a stay pending appeal in this case. Compliance with the order will not deprive ED of its right to meaningful appellate review, nor does ED claim otherwise. Its contention that it will suffer irreparable harm is factually thin, and particularly unavailing when taking into account the serious harm that Plaintiffs have suffered—and continue to suffer—from ED's prolonged inaction. A stay that could last years will greatly exacerbate that hardship. Consequently, and for the reasons discussed below, ED's motion should be denied.

## STANDARD OF REVIEW

"On a motion for stay, it is the movant's obligation to justify the court's exercise of such an extraordinary remedy." Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 978 (D.C. Cir. 1985). "The [moving party] must make the following four showings to secure a stay: (1) a strong showing that [it] is likely to succeed on the merits, (2) a showing that unless a stay is granted [it] will suffer irreparable injury, (3) a showing that no substantial harm will come to the other interested parties, and (4) a showing that a stay will do no harm to the public interest." Rio Grande Cmty. Health Ctr. v. Armendariz, 792 F.3d 229, 231 (1st Cir. 2015) (quotation omitted). "A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant."

---

WL 3489679, at *35 n.30 (D. Mass. June 25, 2020) ("[After] [t]he Court found in Williams that the DTR Application was a valid borrower defense application as to two borrowers listed in Exhibit 4 and ordered Education to adjudicate the individual borrower defense that the DTR Application presented . . . it persisted in its view that the law did not require it to render a reasoned decision"). Ultimately, after ED failed to take any steps toward complying with the Court's order with respect to the two Williams borrowers, the case settled, see No. 16-11949-LTS, ECF 112, and the Court entered judgment and closed the case, see id., ECF 132.

Nken v. Holder, 556 U.S. 418, 433 (2009), quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672 (1926). "It is instead 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" Nken, 556 U.S. at 433, quoting Virginian Ry. Co., 272 U.S. at 672. Even if ED could demonstrate that "the denial of a stay will utterly destroy the status quo, irreparably harming [it]"—and it has not—the Court must weigh that against whether "the granting of a stay will cause . . . harm to" Plaintiffs. Providence Journal Co. v. Fed. Bureau of Investigation, 595 F.2d 889, 890 (1st Cir. 1979).

## ARGUMENT

### I. ED Cannot Show that it is Likely to Succeed on the Merits.

"The sine qua non of [the stay] inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). In considering likelihood of success on the merits, "the party requesting a stay must show 'more than a mere possibility of relief' on appeal." Boston Taxi Owners Assoc., Inc. v. City of Boston, 187 F. Supp. 3d 339, 341 (D. Mass. 2016), quoting Nken, 556 U.S. at 434. While "the moving party need not persuade the [district] court that it is likely to be reversed on appeal," it must "establish that the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear," in addition to satisfying the other factors counseling in favor of a stay. Canterbury Liquors & Pantry v. Sullivan, 999 F. Supp. 144, 150 (D. Mass. 1998). ED cannot do this.

In arguing that "serious legal questions are presented" on a possible appeal, ED states that "the issues in this case are complex" because its "resolution took 73 pages" and "the scope of the remand order . . . was unusually broad." Defendants' Memorandum in Support of Motion

for Stay Pending Appeal, ECF 61, at 4 (Defs' Mot.).  But it has failed to identify *why*, exactly, it has "more than a mere possibility" of obtaining relief from the Court of Appeals.  Boston Taxi Owners Assoc., 187 F. Supp. 3d at 341.  ED bears the burden of demonstrating its likelihood of success in reversing this Court's decision, see id.; its conclusory assertions do not suffice.  See Providence Journal Co., 595 F.2d at 890 ("Appellants are not, of course, entitled to a stay pending appeal without showing that their appeals have potential merit"); see also Shedlock v. Spencer, No. 11–11603–NMG, 2013 WL 5291127, at *2 (D. Mass. June 25, 2013) (recommending denial of motion to stay pending appeal where movant "pointed to no reason why the District Court erred" and "simply state[d], without elaboration, that 'there are valid and compelling reasons for the reversal of this Court's order'"), report and recommendation adopted, No. 11–11603–NMG, ECF 106 (Sept. 16, 2013); U.S. S.E.C. v. Howard, 646 F. Supp. 2d 161, 162 (D. Mass. 2009) (denying motion to stay pending appeal where movant "failed to demonstrate[,]" other than in "purely conclusory fashion[,]" its probability of success).

The Court applied well-established case law under the Administrative Procedure Act in reaching its decision.  The First Circuit has long held that an agency may not "take a view of the law in one case that is flatly contrary to the view it set out in earlier (yet contemporary) cases." Thompson v. Barr, 959 F.3d 476, 487 (1st Cir. 2020), quoting Dávila-Bardales v. I.N.S., 27 F.3d 1, 5–6 (1st Cir. 1994).  Here, the Court found that ED had already adjudicated a contemporaneous DTR, submitted by the AGO in 2016 on behalf of American Career Institute (ACI) borrowers, under an effectively identical set of facts and circumstances.  Vara, 2020 WL 3489679, at *5–6, 32–33.[2]  In so doing, ED had applied Massachusetts consumer protection law,

---

[2] As the Court observed, the AGO submitted overwhelming evidence that both ACI and Corinthian committed egregious violations of Mass. Gen. Laws c. 93A.  Vara, 2020 WL 3489679, at *6–7.  In both matters, after the AGO sued ACI and Corinthian in Massachusetts

4

concluding that the ACI borrowers had established the right to relief as a result of overwhelming, undisputed facts and a state court judgment, and again applied Massachusetts law to determine the amount of relief—full restitution. See ECF 33-11. Moreover, ED admitted that its practice under the regulations applicable to all student loans at issue in this case had always been to apply state law in fashioning both the right to and the *amount of* relief. Vara, 2020 WL 3489679, at *32. Because the law requires that an agency adjudicate a petition for relief—such as the one at issue here—in accordance with its contemporaries, the Court's order directing that ED grant relief to Plaintiffs was the "only . . . disposition . . . possible as a matter of law." George Hyman Const. Co. v. Brooks, 963 F.2d 1532, 1539 (D.C. Cir. 1992). For the First Circuit to conclude otherwise, it would have to overrule its own precedent.

The Court's remedial order, "declar[ing] that plaintiffs are entitled to full loan discharges pursuant to the agency's settled course of adjudication," is equally well-founded and straightforward. Specifically, remand to ED for further proceedings would be futile where only one outcome is legally supportable. See N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969) (remand unnecessary where it "would be an idle and useless formality"); George Hyman Const. Co., 963 F.2d at 1539 ("remand would be futile" where "only one disposition is possible as a matter of law"). Although ED may disagree with these conclusions, it has not demonstrated—and cannot demonstrate—that there is more than a mere possibility that the First Circuit would reverse. ED has failed to show that it is entitled to a stay in this respect.

---

Superior Court, it was established (by a consent judgment in the ACI matter and entry of judgment in the Corinthian matter) that the borrowers had a claim for relief under c. 93A. Id. at *31; ECF 33-11. This Court concluded that ED's sole argument to distinguish the underlying matter from the ACI matter was unavailing, because ED's contention rested on the false assumption that borrowers were required to show individual reliance on their school's misrepresentations under Massachusetts law. Vara, 2020 WL 3489679, at *33.

## II.  ED Has Failed to Demonstrate that it Will Suffer Irreparable Harm in the Absence of a Stay.

In order to satisfy the irreparable harm requirement, the movant must prove imminent injury that is "both certain and great." Wisconsin Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C. Cir. 1985). "[I]rreparable harm is not assumed; it must be demonstrated." Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991). "It is also well settled that economic loss does not, in and of itself, constitute irreparable harm. . . . 'Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.'" Wisconsin Gas Co., 758 F.2d at 674, quoting Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958); see Shays v. Fed. Election Comm'n, 340 F. Supp. 2d 39, 49 (D.D.C. 2004) ("simply because the Court's . . . Order will force the [agency] to expend its energy and resources . . . does not amount to 'irreparable injury'"). This principle applies with equal force against the government and its agencies. See Steele v. United States, 287 F. Supp. 3d 1, 5 (D.D.C. 2017) (harm to Internal Revenue Service from injunction preventing it from collecting $36.7 million in fees not irreparable).

ED has not met this high standard of proving irreparable injury. It argues that "[o]nce loans are discharged, Defendants will not be able to get the borrowers to re-enter their agreements . . . And [if] refunds are issued, Defendants cannot get the money back[.]" Defs' Mot. at 4–5. But even if true, economic loss alone is not enough to satisfy ED's burden. See Wisconsin Gas Co., 758 F.2d at 674. In Steele v. United States, the district court enjoined the Internal Revenue Service ("IRS") from charging a fee to issue a preparer tax identification number, and the IRS then moved for a stay pending appeal. 287 F. Supp. 3d at 2. The IRS alleged that it would imminently lose out on collecting $36.7 million in fees, and that "if it is ultimately successful on appeal, the United States may not have any legal or practical method to

6

recover the uncollected fees." Id. at 5 (internal quotation marks omitted). The court was not persuaded. It concluded that a $36.7 million loss would not meet the "high standard for irreparable injury" in light of the IRS's overall budget and funding, and thus did not present an existential threat to the agency sufficient to warrant a stay. Id. The court accordingly denied the government's motion. Id. at 6. Similarly, in Loving v. Internal Revenue Serv., after the district court enjoined the IRS from enforcing a new regulatory scheme requiring tax preparers to pay fees, pass an exam, and complete additional courses to maintain eligible to prepare taxes, the IRS moved to stay, arguing that "[s]hutting down the program would be costly and complex, and such steps would be rendered unnecessary if the Court's decision is reversed." 920 F. Supp. 2d 108, 109–110 (D.D.C. 2013). The court was not persuaded that these harms were irreparable, even though the IRS argued that it may need to refund up to $100 million in registration and testing fees already collected. Id. at 111. The court asked: "why should tax-return preparers continue to pay into a system the Court has found unlawful?" Id.

The cases cited by ED are irrelevant. Every case but one involved the impending release of confidential or classified information that, once turned over or made public, could never be undone and would effectively moot the movant's appeal.[3] See Providence Journal Co., 595 F.2d at 890 (granting stay where FBI was ordered to turn over documents reflecting illegal wiretap to public news organization, and where "[o]nce the documents are surrendered . . . confidentiality will be lost for all time"); MicroStrategy, Inc. v. Business Objects, S.A., 661 F. Supp. 2d 548, 561 (E.D. Va. 2009) (irreparable harm would result from premature release of trade secrets);

---

[3] In the sole case cited by ED in support of its irreparable harm argument that did not turn on the release of documents, Schrader v. Idaho Dep't of Health & Welfare, a stay was granted because the movants were government aid recipients "in the grip of poverty" who "rel[ied] upon the moneys received through the [challenged] program to maintain the barest level of subsistence." 590 F. Supp. 554, 560 (D. Idaho 1984).

7

People for the Am. Way Found. v. Dep't of Educ., 518 F. Supp. 2d 174, 177–179 (D.D.C. 2007) (granting *unopposed* stay in FOIA case, conditioned on requiring agency to petition Court of Appeals for expedited consideration); Ctr. for Intern. Envtl. Law v. Office of the U.S. Trade Representative, 240 F. Supp. 2d 21, 22–24 (D.D.C. 2003) (granting stay in FOIA case conditioned on requiring movant to petition Court of Appeals for expedited consideration); Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) (same, and observing that "stays are routinely granted in FOIA cases"). None of these cases turned on the purely economic injury alleged by ED here.

Moreover, ED has not established with any particularity the scope of its economic injury. The Court's order only requires an *outlay* of funds by ED to the extent that members of the class have made payments on their loans. It is entirely unclear how much money ED has collected on these unenforceable loans. The record shows that many members of the Plaintiff class have been *unable* to make voluntary payments on their loans. See, e.g., AGO DTR, ECF 33-5 at 3 ("many Everest MA borrowers now owe significantly more on their loans than when they left school"); Second Amended Complaint, ECF 28, ¶97 (Plaintiff Indrani Manoo owes $11,000 in principal and $2,450 in interest), ¶114 (Plaintiff Noemy Santiago owes $12,800 in principal and $1,000 in interest). On the other hand, the record reveals that ED has used coercive collection techniques such as wage garnishment and tax refund offset with frequency against members of the class. Vara, 2020 WL 3489679, at *14; Stipulated Facts, ECF 33, ¶19 ("the collection procedures on unpaid federal student loans continue for former Massachusetts Everest students"). So the scope of ED's economic injury in the form of monetary outlay is not established.

Nor has ED established the amount of money that the Court's Order requires it to forego in potential receivables. The AGO's Superior Court judgment against Corinthian amounted to

8

$67.3 million, or "the total of all monies acquired by [Corinthian] from graduates enrolling in the relevant programs during the period July 1, 2007 through June 30, 2014." ECF 33-3 at 5. ED has provided no information concerning what amount of this $67.3 million was comprised of federal student loans (as opposed to grants, which are not repayable, or state aid and private student loans, which are of no concern to ED), nor on the present outstanding balance of those loans. And in any event, any relief owed to Plaintiffs under the Court's Order "is a rounding error when considering the [agency's] overall budget," Steele, 287 F. Supp. 3d at 5. See DEPARTMENT OF EDUCATION FISCAL YEAR 2020 CONGRESSIONAL ACTION at 8 (Feb. 10, 2020), https://www2.ed.gov/about/overview/budget/budget20/20action.pdf (listing 2020 appropriation for Federal Direct Student Loan Program of over $76 billion).[4] Such modest, purely economic harm does not entitle ED to a stay pending appeal.

Lastly, ED has not demonstrated that the absence of a stay "will entirely destroy [its] rights to secure meaningful review." Providence Journal Co., 595 F.2d at 890. Even if ED complies with the Court's Order, an appeal would not be moot because economic loss to ED is not considered "irreparable," Wisconsin Gas Co.,758 F.2d at 674, and because the First Circuit retains jurisdiction to review the Court's complete Order, including the issuance of declaratory relief. Compare NCTA – Internet & Television Ass'n v. Frey, 2020 WL 2529359, at *2 (D. Me. May 18, 2020) (movants would not be denied meaningful appellate review despite order requiring them to make expenditures to comply with State law) with Maine v. U.S. Dep't of

---

[4] Moreover, the Direct Loan Program is a mandatory program under which Congress is required to provide money as necessary to all eligible students, so despite ED's unsupported assertion to the contrary, any financial losses to ED as a result of the Court's order will not impact its ability to lend to other borrowers. 20 U.S.C. § 1087a(a); see Section IV, infra.

9

Interior, 2001 WL 98373, at *3 (D. Me. Feb. 5, 2001) (stay granted where disclosure of documents would moot appeal because "confidentiality will be lost for all time").

### III.     In the Event that a Stay is Granted, Plaintiffs Will Suffer Grievous Injury.

Even if ED is able to establish irreparable harm, the Court's inquiry does not end.  "[T]he issuance of a stay depends on 'whether the harm caused [movant] without the [stay], in light of the [movant's] likelihood of eventual success on the merits, outweighs the harm the [stay] will cause [the non-moving party].'"  Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 16–17 (1st Cir. 2002), quoting United Steelworkers of Am. v. Textron, Inc., 836 F.2d 6, 7 (1st Cir. 1987) (Breyer, J.); cf. Serono Laboratories, Inc. v. Shalala, 158 F.3d 1313, 1318 (D.C. Cir. 1998) (court must weigh whether "an injunction will substantially injure the other party").

Any modest economic harm that ED may suffer pales in comparison to what Plaintiffs will endure if a stay is granted.  As the AGO found, and as ED has never disputed, Plaintiffs are overwhelmingly low-income and have struggled to pay back their Corinthian debt.  See ECF 33-5 at 1 ("Corinthian marketed its programs to individuals who were often unable to afford them. Most of Everest MA's students were in precarious economic circumstances, including many women, students of color, and single parents"); accord STATE OF CALIFORNIA DEPARTMENT OF JUSTICE, "Attorney General Kamala D. Harris Files Suit in Alleged For-Profit College Predatory Scheme" (Oct. 10, 2013), https://oag.ca.gov/news/press-releases/attorney-general-kamala-d-harris-files-suit-alleged-profit-college-predatory (finding that Corinthian intentionally targeted "low income, single mothers and veterans returning from combat").  The AGO further found:

> Overwhelming numbers of former Everest MA students struggle to pay their federal student loans, in addition to onerous private loans. Many other former students are simply unable to pay the enormous debts incurred. These students are in various stages of delinquency and default, making them vulnerable to collection, or they are trapped in forbearance, where their loan balances continue to balloon through interest capitalization. Very few students have been able to use and maintain income-based repayment plans. In

fact, due to forbearance, deferment, default, collection fees, and interest capitalization, many Everest MA borrowers now owe significantly more on their loans than when they left school. Collection of these debts is likely to continue for years and have long-term negative effects on the lives of borrowers and their families.

ECF 33-5 at 3.

The status quo that ED seeks to maintain is well-known to this Court. For the past five years, while the AGO's DTR sat idle in ED's custody, Plaintiffs have struggled to find work, had their wages garnished and tax refunds taken, and otherwise paid back untold thousands of dollars of these unenforceable loans.[5] See, e.g., Vara, 2020 WL 3489679, at *14 (observing that ED collected nearly $10,000 in administrative wage garnishment payments and tax refund offset from Plaintiff Vara, and over $3,000 in tax refund offset from Plaintiff Wilson); Second Amended Complaint, ECF 28, ¶¶107–111 (Plaintiff Santiago is unemployed, has four children, and has been unable to find work in her field). And ED admitted in this litigation that "the collection procedures on unpaid federal student loans continue for former Massachusetts Everest students." ECF 33, ¶19. In light of this Court's holding that Plaintiffs have established a complete defense to repayment of the federal student loans at issue, it would be profoundly unfair for Plaintiffs to "continue to pay into a system the Court has found unlawful," Loving, 920 F. Supp. 2d at 111, when the ongoing harm to Plaintiffs is so severe.[6] And a delay in issuing

---

[5] Notably, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281, § 3513, which provides for statutory relief only on federal student loans held by ED—and thus does not cover members of the class whose federal student loans are commercially-held—is set to expire on September 30, 2020.

[6] ED's evidence-free assertion that the harm faced by Plaintiffs is "unclear" because "[s]ome borrowers in the class have already paid off their loans" or "have already received substantial relief and have had their debts written off" bears no weight here. Defs' Opp. at 5. Of the class of over 7,200 borrowers, many of whom are low-income and incurred tens of thousands of dollars in debt for a worthless degree, ED can point to no one other than Plaintiffs Vara and Wilson who had their debts written off. Vara, 2020 WL 3489679, at *14. As for borrowers who have already paid off their loans in full, there is no evidence that those borrowers are facing any

refunds on loan amounts paid would have the perverse effect of rewarding ED—and further injuring Plaintiffs—for ED's unjust delay in resolving this matter, during which time it continued to collect on loan payments by both voluntary and involuntary means.

### IV. The Public Interest Weighs Heavily in Favor of Plaintiffs.

The "borrower defense" provision of the Higher Education Act, which directs the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment" of a federal student loan, is a remedy intended to protect the public from fraud and misconduct.  20 U.S.C. § 1087e(h).  See 34 C.F.R. § 685.206(c) (eff. until Oct. 16, 2018) ("[i]n any proceeding to collect on a Direct Loan, the borrower may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law"); see also Vara, 2020 WL 3489679, at *3 ("under the HEA, the 1995 borrower defense regulation, and the agency's interpretations, the Secretary has a duty to adjudicate applications or claims for borrower defense relief").  ED itself has recognized the need to "offer relief to Corinthian students who were defrauded[,] [a]nd . . . continue to take action to protect students and taxpayers from unscrupulous companies trying to profit off of students who simply want to better their lives."  Press Release, U.S. DEPARTMENT OF EDUCATION, U.S. Department of Education Announces Path for Debt Relief for Students at 91 Additional Corinthian Campuses (Mar. 25, 2016), https://perma.cc/266L-Y7DX.  It is clearly in the public's interest for thousands of student borrowers, who have waited half a decade for relief owed to them as a matter of law, to not suffer from yet another lengthy delay.

---

less harm simply because they paid back—or had money garnished to pay back—an unenforceable debt.

ED's claim that, if Plaintiffs receive refunds on loan amounts already paid, "the public interest would be harmed because fewer funds would be available for new loans," is objectively wrong. Defs' Opp. at 5. Under the Direct Loan Program (DLP), HEA, Title IV, Part D, Congress makes available to the Department of Education "such sums as may be necessary" to lend to "all eligible students (and the eligible parents of such students)" who are eligible under the program. 20 U.S.C. § 1087a(a); see 20 U.S.C. § 1087b(a) ("The Secretary shall provide, on the basis of the need and the eligibility of students . . . funds for student and parent loans under this part. . . ."). The Direct Loan Program is a mandatory program that Congress has exempted from annual appropriations requirements. See OMB Circular No. A-11 (2016), Section 20, p. 6 ("Entitlement refers to a program in which the Federal Government is legally obligated to make payments or provide aid to any person who . . . meets the legal criteria for eligibility. Entitlements are generally provided by an authorizing statute, and can include loan and grant programs"). Congress separately provided for an appropriation of "such sums as may be necessary" for "administrative expenses necessary for carrying out [Title IV], including expenses for staff personnel, program reviews, and compliance activities." 20 U.S.C. § 1098b. Prompt relief to the Plaintiffs will thus not work to the detriment of any other borrowers.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that ED's motion for a stay of the Court's June 25, 2020 Order pending appeal be denied.[7]

---

[7] In the event that the Court is inclined to grant a stay pending appeal, Plaintiffs respectfully request that such a stay be limited to ED's obligation to provide refunds on loan amounts already paid, and otherwise enjoin ED and its agents from any collection of Corinthian-related loans from or on behalf of anyone listed on Exhibit 4 of the AGO's DTR.

Respectfully submitted,

By: */s/ Michael N. Turi*
Eileen M. Connor
Toby R. Merrill
Victoria Roytenberg
Michael N. Turi (*pro hac vice*)
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
(617) 522-3003

*Attorneys for Plaintiffs*

Dated: August 14, 2020

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon counsel for all parties of record through the CM/ECF system on August 14, 2020.

                                              */s/ Michael N. Turi*
                                              Michael N. Turi

Dated: August 14, 2020