UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANA VARA, AMANDA WILSON, NOEMY SANTIAGO, KENNYA CABRERA, and INDRANI MANOO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELISABETH P. DEVOS, in her official capacity as Secretary of the United States Department of Education,<br><br>and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendants. | Civil Action No. 19-12175-LTS<br><br>ORAL ARGUMENT REQUESTED |

## PLAINTIFFS' MOTION TO ENFORCE JUDGMENT

Plaintiffs Diana Vara, Amanda Wilson, Noemy Santiago, Kennya Cabrera, and Indrani Manoo, on behalf of themselves and all others similarly situated ("Plaintiffs"), respectfully request that this Court, pursuant to Federal Rule of Civil Procedure 70 and the court's inherent equitable powers, (i) find that the Secretary of Education and the United States Department of Education ("Defendants") have failed to comply with this Court's Order on Plaintiffs' Motion for Judgment, dated June 25, 2020 (ECF No. 58), and the Court's Order of Stay, dated August 20, 2020 (ECF No. 69), by failing to render a reasoned decision not inconsistent with the June 25 Order by September 7, 2020; (ii) hold Defendants in contempt of both Orders, and (iii) direct Defendants to

issue a reasoned decision within seven days of the Court's ruling on this motion, with a penalty of $1,000 per day to accrue daily thereafter until Defendants come into compliance.

For the reasons discussed in the accompanying Memorandum of Law, Defendants have disregarded this Court's clear directive that, by September 7, 2020, Defendants must issue a reasoned decision on the defense to repayment application submitted by the Massachusetts Attorney General's Office. The announcement posted by Defendants to their website (ECF No. 73-1) does not satisfy the Court's Orders because it is not a "reasoned decision." Defendants should be held in contempt if they do not issue a reasoned decision within seven days of the Court's ruling on this motion, and given Defendants' extensive record of recalcitrance, civil contempt penalties should accrue daily thereafter until Defendants come into compliance.

WHEREFORE, Plaintiffs respectfully request that the Court enforce the Order on Plaintiffs' Motion for Judgment, dated June 25, 2020, and the Order of Stay, dated August 20, 2020.

Respectfully submitted,

By: */s/ Toby R. Merrill*
Eileen M. Connor
Toby R. Merrill
Victoria Roytenberg
Michael N. Turi (*pro hac vice*)
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
(617) 522-3003
Attorneys for Plaintiffs

Dated: October 21, 2020

## Local Rule 7.1 Certification

Plaintiffs' counsel have discussed the basis of this motion with Defendants' counsel and have been unable to resolve the issues briefed herein.

                                                  */s/ Toby R. Merrill*
                                                  Toby R. Merrill

Dated: October 21, 2020

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE JUDGMENT

This case involves a defense to repayment ("DTR") application submitted by the Massachusetts Attorney General's Office ("AGO") on behalf of over seven thousand citizens of the Commonwealth to the U.S. Department of Education (the "Department") on November 30, 2015—nearly *five years ago* at the time of this filing. The students named in the AGO's application were defrauded by a predatory for-profit college, and they have been waiting for the Defendants to make a determination of their rights, all the while weighed down by often-crushing student loan debt. After all this time, and after receiving a crystal-clear directive from this Court, and after themselves agreeing to a specific deadline for finally issuing a reasoned decision on the AGO's application, Defendants have unilaterally decided to grant themselves another extension. This unexcused delay violates this Court's Order on Plaintiffs' Motion for Judgment, dated June 25, 2020 (ECF No. 58, the "June 25 Order"), and the Court's Order of Stay, dated August 20, 2020 (ECF No. 69, the "Stay Order"). The Court should enforce those Orders, and hold the Defendants in contempt if they continue their failure to comply.

The Court's June 25 Order and the Stay Order held, in no uncertain terms, that Defendants must render a reasoned decision on the AGO's application by September 7, 2020. See June 25 Order at 72; Stay Order at 2. Defendants themselves agreed to this deadline when the parties submitted an agreed-upon Joint Proposed Order for a partial stay, see ECF No. 68, which this Court entered unchanged, compare ECF No. 69. Defendants even affirmed their agreement with this expectation in their briefing on their motion for a stay pending appeal: "[I]n the event of an appeal, Defendants will still have to issue a decision by [September 7], 2020, that is consistent with the Court's June 25, 2020, order." Defendants' Reply in Support of Motion for an Order Staying the Execution of the Court's Order Pending Appeal ("Stay Reply"), ECF No. 64 at 4.

1

Defendants then failed to comply with these orders. On October 2, 2020, Defendants filed with this Court a copy of what they described as a "notice of decision and other material that was issued pursuant to" the June 25 Order. ECF No. 73 at 1. This "notice" consists of a one-page printout from the Department's website, which states, in substance, that this Court issued an order and the Department is appealing that order. See ECF No. 73-1. What this announcement does *not* contain is a reasoned decision on the AGO's application. Indeed, the announcement does not even state whether or in what respects the Department adopts or declines to adopt the reasoning in the June 25 Order, much less set out the Department's own reasoning. The announcement entirely fails to satisfy the basic requirement that a reasoned decision "explain why [the agency] chose to do what it did," June 25 Order at 52 (quoting Tourus Records, Inc. v. Drug Enf't Admin., 259 F.3d 731, 737 (D.C. Cir. 2001)). Moreover, Defendants' intransigence here is yet another in a long line of tactics in which Defendants have engaged to avoid satisfying their legal obligations with respect to the AGO's application. These tactics cannot continue.

This Memorandum first reviews the factual and procedural background relevant to this motion, including Defendants' efforts over the course of two separate lawsuits to avoid rendering a decision on the AGO's application. Second, this Memorandum goes on explain (1) how Defendants have failed to comply with this Court's June 25 Order and the Stay Order, and (2) why Defendants should be held in civil contempt and fined until they comply with the Court's Orders.

## BACKGROUND

As this Court is well acquainted with the factual and procedural history of this matter, Plaintiffs will briefly review certain events relevant to the instant motion.

This case is a follow-on from Williams v. DeVos, No. 16-11949-LTS (D. Mass.). In Williams, two former students of for-profit colleges in Massachusetts operated by Corinthian

Colleges, Inc. ("Corinthian") asserted that the Secretary of Education ("Secretary") could not have lawfully determined that their federal student loans were enforceable, because at the time that the Secretary certified their debts, she had in her possession a valid DTR application submitted by the AGO, supported by significant evidence that the loans were not enforceable due to Corinthian's violations of state law. See generally id., ECF No. 1 (Sept. 28, 2016).  On October 24, 2018, this Court concluded that the AGO's DTR application "invoked the administrative remedy of Education's review process such that Education was required to adjudicate the request," and that the Secretary had acted "arbitrarily and capriciously" by "failing to issue a reasoned decision" on the application the AGO had made on behalf of both plaintiffs. Williams v. DeVos, No. 16-11949-LTS, 2018 WL 5281741, at *10, *14 (D. Mass. Oct. 24, 2018). The Court ordered the Department to issue a reasoned decision on the merits of the two plaintiffs' applications. Id. at *15. At the time of this order, it had already been nearly three years since the AGO submitted its DTR application.

In response to the Court's order, the Department demanded that the plaintiffs submit additional materials in order to have their DTR applications considered—even though the Court had already ruled that the AGO's submission constituted a valid application. See June 25 Order at 23. In February 2019, the Court again ordered the Department to issue a reasoned decision, this time within 30 days. Id. at 23-24. Before those 30 days elapsed, the parties settled the case as to the two plaintiffs; meanwhile, however, the Commonwealth of Massachusetts moved to compel the Department to issue a decision as to all borrowers named in the AGO's application. See id. at 24-25. The Court denied that motion on August 8, 2019, noting that the issues raised in the Commonwealth's motion could be addressed in a separate suit. See Williams v. DeVos, No. 16-11949-LTS, 2019 WL 7592345, at *2 (D. Mass. Aug. 8, 2019). This case followed.

3

The Plaintiffs in this lawsuit sought a ruling, on behalf of themselves and a class including all 7,241 students named in the AGO's DTR application, that (i) Defendants acted arbitrarily and capriciously by refusing to render a reasoned decision on the AGO's application; (ii) the AGO's application established a borrower defense for all federal student loans associated with the named students' attendance at Corinthian schools in Massachusetts; and (iii) the only non-arbitrary action Defendants could take on the AGO's application would be to cancel all such loans for all such borrowers. See June 25 Order at 26.

On November 13, 2019, Plaintiffs moved for class certification. While that motion was pending, Defendants attempted to "pick off" Plaintiffs Vara and Wilson, who at the time were the only named plaintiffs in this case. On January 5 and 6, 2020, Defendants wrote off the balances of Ms. Vara's and Ms. Wilson's federal student loans and refunded their previous payments—*not* pursuant to the DTR process, and *not* accompanied by any written decision, but rather as an exercise of discretionary authority by the Secretary. See ECF No. 31 ¶¶ 25-26; ECF No. 32 ¶¶ 23-24. Defendants then argued in their opposition to class certification that Ms. Vara's and Ms. Wilson's claims were moot. See ECF No. 39 at 12. While this Court ultimately rejected Defendants' mootness argument, see July 25 Order at 37-39, Plaintiffs had to add new named plaintiffs to the case and submit an amended complaint and supplemental motion for class certification, see ECF Nos. 28-29, to guard against Defendants' cynical tactics.

On June 25, 2020, this Court issued its Order on Plaintiffs' motions for class certification and for judgment on the record. As to class certification, the Court found all applicable requirements of Rule 23 satisfied, and certified a class consisting of "[a]ll individuals who borrowed a federal student loan to pay the cost of attendance for the 7,241 students identified in Exhibit 4 to the [AGO's] DTR Application who have not yet had their federal student loans

completely discharged due to a successful borrower defense claim, have not yet received a refund of sums already collected, and have not yet received a favorable decision as to a borrower defense application." July 25 Order at 44.

As to Plaintiffs' motion for judgment, the Court held, as an initial matter, that the Secretary's failure to issue a ruling on the AGO's DTR application was a judicially reviewable agency action, because there was ample "law to apply" regarding the Department's duty to adjudicate borrower defense claims. See id. at 46-50. Indeed, Defendants themselves admitted in this litigation that state law provides the rule of decision for whether a borrower has established a defense to repayment—a position supported by the Department's own past practices. See id. at 50-51. The Court went on to hold that the Administrative Procedure Act ("APA") imposes on Defendants "the obligation to 'articulate [] satisfactory explanation[s]' for the agency's actions"—in other words, to issue reasoned decisions—with respect to all borrower defense applications. Id. at 53 (alterations in original) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

Because the AGO's DTR application was a valid means of seeking relief for all borrowers named therein, the Department was obligated to issue a reasoned decision on the AGO's application. See id. at 53-59. The Department's refusal to issue any decision on that application constituted a constructive denial of the application, see id. at 59-61, which was arbitrary and capricious under the APA, see id. at 61-62. Finally, the Court held that "the precise legal questions at issue—whether plaintiffs have established their right to borrower defense relief and whether plaintiffs are entitled as a matter of law to full loan discharges—are directly and unequivocally answered by the record evidence." Id. at 63. Under applicable Massachusetts law, the only possible conclusion to reach was that all members of the class had established a right to full discharge of

their federal student loans and refund of amounts previously paid. See id. at 64-67. Accordingly, no remand for further agency factfinding was necessary. See id. at 68.

The Court thus issued a declaratory judgment that (i) the AGO's DTR application was a valid borrower defense application submitted on behalf of all individuals who took out federal student loans to pay for the cost of attendance for students listed in the application; (ii) Plaintiffs had established a right to borrower defense relief for all such individuals; and (iii) such individuals are entitled to full loan discharges. Id. at 71-72. The Court set aside the Department's constructive denial of the AGO's DTR application, and remanded the matter to the agency to "render a reasoned decision not inconsistent with this Order." Id. at 72.

The June 25 Order called for the reasoned decision to issue within 60 days. Id. After Defendants moved for a stay pending appeal and the parties subsequently negotiated the Stay Order, that deadline was changed to September 7, 2020. See Stay Order at 2 ("For the avoidance of doubt, the Court's Order vacating Defendants' constructive denial of the Attorney General's application, declaring that members of the class have established a complete borrower defense to repayment, remanding to the agency, and requiring a decision by September 7, 2020 remains in effect.").

On October 2, 2020, the Defendants filed their putative "notice of decision." ECF No. 73. That announcement on Defendants' website offers a three-sentence summary of the June 25 Order, states that the Department is appealing the Order, and informs class members that their loans will not be discharged during the pendency of the appeal. See ECF No. 73-1. It does not link to or attach a copy of the June 25 Order, nor contain any commentary or analysis whatsoever from the Department respecting either the June 25 Order or the AGO's DTR application more generally. See id. Nor does this announcement state why or on what basis the Department is appealing the

June 25 Order. See id. It merely states that, "[a]fter the appeals process concludes, [the Department] will provide affected borrowers with an update." Id.

## LEGAL STANDARD

Federal Rule of Civil Procedure 70(a) contemplates that a court may order enforcement of "a judgment . . . to perform any . . . specific act," and Rule 70(e) provides that the court "may also hold the disobedient party in contempt." See generally Spallone v. United States, 493 U.S. 265, 275-76 (1990); Analytical Eng'g, Inc. v. Baldwin Filters, Inc., 425 F.3d 443, 451 (7th Cir. 2005) ("Under Rule 70, therefore, a district court may direct a party to complete a specific act where the district court previously directed the same party to perform the same act in its final judgment and that party has failed to comply."). "Relief may be had against the United States" and its officials under Rule 70. Lufkin v. United States, 168 F. Supp. 451, 455 (D.N.H. 1958); see also, e.g., Morales Feliciano v. Hernandez Colon, 771 F. Supp. 11, 12-13 (D.P.R. 1991) (applying Rule 70 to appoint special master in case against prison officials of the Commonwealth of Puerto Rico); Gilbert v. Johnson, 490 F.2d 827, 829 (5th Cir. 1974) (per curiam) (noting that plaintiff "proceeded properly" in invoking Rule 70 to enforce judgment against Veterans' Administration and its officials); id. at 830 n.6 ("If appropriate, this includes the right to apply the sanctions of contempt even though Government officials are involved.").

A district court also has inherent authority to enforce its judgments, including via civil contempt. See Shillitani v. United States, 384 U.S. 364, 370 (1966). This authority likewise extends to public agencies and officials. See, e.g., Fortin v. Comm'r of Mass. Dep't of Public Welfare, 692 F.2d 790, 797 (1st Cir. 1982) (holding state agency in civil contempt and imposing fine for failure to comply with consent decree); Am. Rivers v. U.S. Army Corps of Eng'rs, 274 F. Supp. 2d 62, 69-70 (D.D.C. 2003) (holding Army Corps of Engineers and Secretary of the Army

in civil contempt, and collecting cases supporting judicial authority to hold federal agencies in civil contempt and impose coercive fines).

A court may hold a party in civil contempt if the moving party establishes, by clear and convincing evidence, that "(1) the alleged contemnor had notice of the order, (2) 'the order was clear and unambiguous,' (3) the alleged contemnor 'had the ability to comply with the order,' and (4) the alleged contemnor violated the order." Hawkins v. Dep't of Health & Human Servs. for N.H., Comm'r, 665 F.3d 25, 31 (1st Cir. 2012) (quoting United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005)). A finding of civil contempt can include the imposition of coercive monetary penalties. See, e.g., Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994); AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 420, 426 (1st Cir. 2015). "Where the purpose of a monetary sanction is to make the defendant comply, the court has wide discretion in considering the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about compliance and the like." In re Power Recovery Sys., Inc., 950 F.2d 798, 802 (1st Cir. 1991).

## ARGUMENT

**I.     Defendants Have Not Complied with the June 25 Order and the Stay Order**

    **A.     Defendants Were Required to Issue a Reasoned Decision by September 7, 2020**

This Court's June 25 Order and the Stay Order could not have been clearer: the Department was required to issue a reasoned decision on the AGO's DTR application by September 7, 2020. See June 25 Order at 72; Stay Order at 2. Indeed, Defendants themselves agreed to the precise wording of the Stay Order. See ECF No. 68 (Joint Proposed Stay Order). And as Defendants explained in their own briefing in support of their motion for a stay pending appeal, the only obligation of the June 25 Order that they specifically sought to stay was the obligation to actually

8

discharge federal student loans and/or refund past payments to borrowers:

> The problem Education seeks to address is clear: once the agency effectuates loan forgiveness for class members, it has no lawful basis on which it may reinstate their discharged loans (or any portion thereof) or recover funds on their discharged loans (or any portion thereof). . . . An order that stays only the effect of the court's judgment that Plaintiffs are entitled to full loan forgiveness is sufficient to address this. Under such an order, ***in the event of an appeal, Defendants will still have to issue a decision by [September 7], 2020, that is consistent with the Court's June 25, 2020, order*** and must take all other steps necessary to comply with the Court's order. Stated differently, the government will be required to carry out the same processes and procedures that would be taken in the absence of any stay, with the exception that the government will not be required to effectuate the final step of final and irreversible discharges and refunds until any appeals process is complete.

Stay Reply at 4 (emphasis added) (footnote omitted).

Because Defendants' obligation to issue a reasoned decision was not stayed, the pendency of Defendants' appeal is irrelevant to this motion. See, e.g., Island Creek Coal Sales Co. v. City of Gainesville, Fla., 764 F.2d 437, 440-41 (6th Cir. 1985) ("Where, as here, the district court is attempting to supervise its judgment and enforce its order through civil contempt proceedings, pendency of appeal does not deprive it of jurisdiction for these purposes.").[1] If Defendants believed

---

[1] Accord NLRB v. Cincinnati Bronze, Inc., 829 F.2d 585, 588 (6th Cir. 1987); Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1208 (11th Cir. 1985); McLean v. Central States, Se. & Sw. Areas Pension Fund, 762 F.2d 1204, 1210 (4th Cir. 1985); Farmhand, Inc. v. Anel Eng'ring Indus., Inc., 693 F.2d 1140, 1146 (5th Cir. 1982); cf. Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 29 (1st Cir. 2002) ("Contrary to plaintiffs' assertion, there is no requirement that the judgment become final before it can be enforced."); Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, [she] must comply promptly with the order pending appeal. Persons who make private determination of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.").

As the authorities cited above (among others) demonstrate, complying with a court order pending appeal does not vitiate a party's right to appellate review of that order. If the order is ultimately reversed, so too will any citation for civil contempt be reversed. See, e.g., Ager v. Jane C. Stormont Hosp. & Training Sch. For Nurses, 622 F.2d 496, 500 (10th Cir. 1980); United States v. Spectro Foods, 544 F.2d 1175, 1182 (3d Cir. 1976); cf. Kleiner, 751 F.2d at 1208 ("Disobedience of a court order unequivocally merits punishment save in instances in which

that they could not comply with this aspect of the June 25 Order pending appeal, it was incumbent on Defendants to make a showing to that effect. See, e.g., Rio Grande Cmty. Health Ctr. v. Armendariz, 792 F.3d 229, 231 (1st Cir. 2015) (to justify a stay pending appeal, the moving party must make "(1) a strong showing that [it] is likely to succeed on the merits, (2) a showing that unless a stay is granted [it] will suffer irreparable injury, (3) a showing that no substantial harm will come to the other interested parties, and (4) a showing that a stay will do no harm to the public interest").[2] They did not.

### B. Defendants' Announcement Does Not Constitute a "Reasoned Decision"

Defendants have taken the position that the bare-bones announcement posted on the Department's website about the Court's June 25 Order (ECF No. 73-1) constitutes compliance with the Order. Not so. As this Court explained in detail in the June 25 Order, "a fundamental requirement of administrative law is that an agency set forth its reasons for decisions." June 25 Order at 52 (alterations and internal quotation marks omitted) (quoting Tourus Records, Inc. v. Drug Enf't Admin., 259 F.3d 731, 737 (D.C. Cir. 2001)). A reasoned decision is one that evinces a "rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43 (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)). "This requirement not only ensures the agency's careful consideration . . . but also gives parties the opportunity to apprise the agency of any errors it may have made and, if the agency persists in its decision, facilitates judicial review." Tourus Records, 259 F.3d at 737. "[C]onclusory statements will not do; an 'agency's statement must be one of *reasoning*.'" June 25 Order at 52-53 (emphasis in

---

compliance would necessarily result in 'an irrevocable and permanent surrender of a constitutional right.'" (quoting In re Grand Jury Proceedings, 601 F.2d 162, 169 (5th Cir. 1979))).

[2] Cf. Morales Feliciano v. Rosello Gonzalez, 124 F. Supp. 2d 774, 786 (D.P.R. Dec. 20, 2000) ("The burden of establishing impossibility or inability to comply as a defense to civil contempt is on the party raising the defense.")

original) (quoting Amerijet Int'l, Inc. v. Pistole, 753 F.3d 1343, 1350 (D.C. Cir. 2014)). In other words, "the core requirement is that the agency explain 'why it chose to do what it did.'" Id. at 52 (quoting Tourus Records, 259 F.3d at 737).

The announcement that Defendants filed with this Court does not even clearly set forth any *decision* by the Department, much less its reasoning. To begin, the document is titled "Notice of Decision About the Vara v. DeVos Case" (ECF No. 73-1)—suggesting a litigation update, not a substantive agency decision. Indeed, this document was posted in the "Announcements & Events" section of the Department's studentaid.gov website.

The first paragraph of the announcement briefly describes the AGO's application (although characterizing it as a "request[]" and a "submission," not as a valid DTR application per the June 25 Order). See id. The second paragraph summarizes two holdings from this Court's June 25 Order: namely, that all class members have a right to borrower defense relief and that they are entitled to full discharges. See id. But the notice does not state, one way or another, whether Defendants have made a decision to adopt these holdings, or on what basis Defendants have adopted or declined to adopt any of the reasoning in the June 25 Order.[3] This Court's opinion laid out numerous legal authorities and detailed reasoning for Defendants to address and apply in their reasoned decision, but Defendants do not address *any* of that in the announcement. For example, the announcement does not state that the Department has concluded that the AGO's DTR application was a valid borrower defense application (see June 25 Order at 53-59), or that state law provides the standard for assessing a borrower defense application (see id. at 63-64), or that

---

[3] Notably, the Department's website does not link to or embed a copy of the Court's decision for class members or other interested parties to review. To the extent the Defendants may argue that the announcement represents an adoption the June 25 Order, or any part of it, the absence of the text of that Order cuts against such a pretextual argument.

11

the Department is granting the AGO's application with no need for further action by borrowers (see id. at 60-62, 65), or that borrowers are entitled to full discharge (see id. at 62-63, 65-68)—among other issues.

The announcement then states that the Department "is appealing the district court's ruling to the United States Court of Appeals for the First Circuit." ECF No. 73-1. But again, there is no further information about which aspects of the Court's decision the Defendants take issue with on appeal. Contextually, the placement of this sentence may suggest that Defendants are refusing to adopt the two key holdings identified in the previous paragraph—i.e., the establishment of a borrower defense for the class and the right to full discharge. But if that is the case, the Defendants provide no reasoning behind their conclusion. The remainder of the announcement states merely that the Department's obligation to discharge or refund any affected loans has been stayed, but the Department will hold these loans in stopped payment or forbearance status during the pendency of the appeal, and will provide an "update" once the appeal is resolved. See id.

Ultimately, this announcement fails to communicate any information whatsoever about the Department's position or reasoning with respect to any aspect of the AGO's DTR application. The announcement shows only that the Department believed it was compelled to announce the existence of the Court's order to the class and the public. That meager announcement does not meet the standard of a "reasoned decision" that this Court set forth in the June 25 Order.

## II. Defendants Should Be Held in Civil Contempt and Fined Until They Comply with the Court's Orders

As explained above, a district court may hold a party in civil contempt upon a finding that the party violated a clear and unambiguous court order, where the party had notice of the order and the ability to comply. Hawkins, 665 F.3d at 31. All of these elements are present here.

First, Defendants undisputedly had notice of both the June 25 Order and the Stay Order.

12

Second, Defendants' ability to comply likewise cannot be questioned—indeed, by signing onto the proposed Stay Order that set the compliance date of September 7, 2020 (ECF No. 68), Defendants affirmatively signaled their ability to comply by that date. See Feliciano v. Vila, Civil No. 79-4(PG), 2007 WL 4404730, at *13 (D.P.R. Dec. 13, 2007) ("[W]hen a party participates in drafting the relevant order, it does (or is held to have done) so 'with an understanding of what it can reasonably accomplish.'" (quoting Cobell v. Babbitt, 37 F.Supp.2d 6, 9-10 (D.D.C. 1999))). Third, both the June 25 Order and the Stay Order were clear and unambiguous; the Stay Order even repeated the Defendants' obligation to issue a reasoned decision by September 7 "[f]or the avoidance of doubt." Stay Order at 2. The only area of potential dispute is whether Defendants' website announcement satisfied the Orders—and as detailed above, it did not.

Moreover, Defendants' failure to comply with the Orders is just the latest in a long pattern of Defendants' machinations to avoid their legal obligations with respect to the AGO's DTR application.[4] To begin, of course, Defendants held the AGO's application without decision for years—while Plaintiffs and other class members struggled to find work, had their wages garnished and tax refunds taken, and otherwise paid back thousands of dollars toward fraudulent, unenforceable loans—then argued in litigation that it had no obligation to take any action on the application whatsoever. See generally June 25 Order at 17-22 (describing history of AGO's application and Williams litigation).

---

[4] Nor is this pattern limited to the instant case. See, e.g., Calvillo Manriquez v. DeVos, 411 F.Supp.3d 535 (N.D. Cal. 2019) (imposing civil contempt sanctions on Secretary for violation of court order to cease collection on federal student loans for a group of former Corinthian students); Order Denying Class Settlement, to Resume Discovery, and to Show Cause, Sweet v. DeVos, No. 3:10-cv-03674-WHA (N.D. Cal. Oct. 19, 2020), ECF No. 146 (ordering Secretary to show cause why the court should not enjoin Department's issuance of form denials of borrower defense applications, where those denials are "perfunctory," "Kafkaesque," and "utterly devoid of meaningful explanation").

When this Court in Williams ordered the Defendants to issue a decision for two of the students named in the AGO's application, Defendants dragged their feet. First they demanded additional documentation (which contravened the Court's finding that the AGO had already submitted a valid DTR application for the two students), and then they suggested that the Secretary might discharge the two students' loans in a manner that would have sidestepped the DTR process. See id. at 23-24. At a status conference held over 90 days after the Court's order in Williams, the Defendants acknowledged that they had not even set a timetable to take any action in accordance with that order. See Williams, No. 16-11949-LTS, ECF No. 110 (Transcript of Hearing of February 5, 2019). When this Court demanded a reasoned decision by a date certain, Defendants settled the case rather than provide one. See June 25 Order at 24.

Then, in the current case, Defendants have insisted on relitigating many of the same questions at issue in Williams, including by arguing that they never had an obligation to issue a reasoned decision on the AGO's application—or on any borrower defense application, for that matter. See June 25 Order at 52, 53-54, 55, 61-62. Defendants also attempted to intentionally moot Ms. Vara's and Ms. Wilson's claims in order to "pick off" the named plaintiffs in this case and thus avoid ever having to issue a DTR decision for the other 7,239 students who, as the AGO's application clearly demonstrated, were defrauded by Corinthian.

In the Williams litigation, this Court applied a "presumption that the [Secretary], a public official, will act in good faith and comply with governing law as declared by the Court." Williams, No. 16-11949-LTS, ECF No. 35 (Sept. 14, 2017). Now, three years and zero reasoned decisions later, that presumption can no longer hold. The Department has done everything it can to avoid complying with the governing law announced by this Court, up to and including its current strategy of blatantly ignoring the June 25 Order and the Stay Order. Contempt penalties are necessary to

coerce Defendants into compliance with the law.

A contempt sanction of $1,000 per day until Defendants come into compliance with this Court's Orders is reasonable in light of "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." Morales-Feliciano v. Parole Bd. of Comm. of P.R., 887 F.2d 1, 6 (1st Cir. 1989) (Breyer, J.) (quoting United States v. UMW, 330 U.S. 258, 304 (1947)); see, e.g., id. at 3, 6 (affirming contempt sanction of $50 per inmate per day against prison officials in overcrowding case, totaling potentially thousands of dollars per day); J.L. v. Cuccinelli, No. 18-CV-04914-NC, 2020 WL 2562896, at *1 (N.D. Cal. Mar. 27, 2020) (describing contempt sanction of $500 per person per day until Department of Homeland Security repatriated individuals who had been deported in violation of court order). As explained, the harm to class members here is serious and long-standing, and it is clear from Defendants' litigation history that a substantial sanction will be necessary to coerce their compliance.

## CONCLUSION

For the foregoing reasons, the Court should find that the Defendants have failed to comply with this Court's June 25 Order and Stay Order, hold Defendants in contempt of both Orders, and direct Defendants to issue a reasoned decision within seven days of the Court's ruling on this motion, with a penalty of $1,000 per day to accrue daily thereafter until Defendants come into compliance.

    Respectfully submitted,

    By: */s/ Toby R. Merrill*
    Eileen M. Connor
    Toby R. Merrill
    Victoria Roytenberg
    Michael N. Turi (*pro hac vice*)
    LEGAL SERVICES CENTER OF

                        HARVARD LAW SCHOOL
                        122 Boylston Street
                        Jamaica Plain, MA 02130
                        (617) 522-3003

                        *Attorneys for Plaintiffs*

Dated: October 21, 2020

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served upon counsel for all parties of record through the CM/ECF system on October 21, 2020.

                                        */s/ Toby R. Merrill*
                                        Toby R. Merrill

Dated: October 21, 2020