## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

DIANA VARA, AMANDA WILSON,
NOEMY SANTIAGO, KENNYA
CABRERA, and INDRANI MANOO,
on behalf of themselves and all others
similarly situated,
 Plaintiffs,

v.                                              Civil No. 19-12175-LTS

ELISABETH P. DEVOS, in her official
capacity as Secretary of the United States
Department of Education, and THE UNITED
STATES DEPARTMENT OF EDUCATION,
                Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE JUDGMENT**

Plaintiffs have moved under Fed. R. Civ. 70 to enforce the Court's judgment of June 25,

2020 (ECF No. 58) and partial stay order of August 20, 2020 (ECF No. 65). *See* ECF No. 74. They

contend that Defendants, the United States Department of Education (Education or Department)

and the Secretary of Education, failed to properly issue a decision by September 7, 2020, in

accordance with this court's orders, and they urge this Court to hold Defendants in civil contempt.

ECF No. 74, at 4-5, 18.[1]

Plaintiffs' motion is unwarranted, and a finding of contempt is wholly unsupported.

Defendants timely announced a determination regarding borrower defense relief consistent with

this Court's orders. Indeed, as discussed below, Education published this class-wide determination

on September 4, 2020 (three days before the deadline), and, based on the rulings of this Court, it

properly sets forth the relief to which class members are entitled. The Department sought to make

---

[1] This opposition will cite to the page numbers in the header of the ECF entry.

clear, in the simplest terms possible, that (1) as a matter of law, under this Court's June 25 decision, all class members are entitled to complete borrower defense relief; (2) in light of the August 20 order, loans are not being discharged or refunded at this time, but specified relief is being provided during the pendency of the appeal (such as keeping loans in forbearance and stop-collection status); and (3) based on the outcome of appellate proceedings, Defendants will provide further information to class members.

As explained in the Declaration of Charlotta Hornig (Hornig Dec.) (attached as Exhibit 1), Defendants have been diligent in complying with this Court's orders—both in issuing a written class-wide determination that reflects the Court's rulings and in implementing the relief measures required at this time. Plaintiffs do not suggest that Defendants' class-wide announcement mischaracterizes or misconstrues the student borrower defense relief to which Plaintiffs are lawfully entitled. Nor does Plaintiffs' motion challenge the numerous steps devised by Defendants to effectuate the Court's orders—including, but not limited to, sending decision notices to all class members, creating borrower defense application files for each class member, keeping loans held by Education in forbearance or stop-collection status and providing interest credits.

Rather, Plaintiffs take issue with Defendants' specific word choices (questioning, for example, the clarity of a heading that appears on the webpage where the decision is posted, ECF No. 74, at 11), and succinct approach. Their central contention is that the Defendants were required to issue a decision that explained whether "Defendants have adopted or declined to adopt any of the reasoning in the June 25 Order." ECF No. 74, at 11. But Defendants have no authority to issue a decision rejecting this Court's reasoning. As Plaintiffs cannot seriously dispute, the outcome and reasoning of Defendants' adjudication of class members' borrower defense claims are dictated by this court's June 25 decision, unless and until that decision is vacated or reversed in some respect.

Defendants recognize this and have proceeded accordingly. This is entirely proper, and it certainly offers no basis for a finding of contempt.

## The Court's Orders

On June 25, 2020, this Court granted Plaintiffs' motion for class certification and motion for judgment. The Court held that the Massachusetts Attorney General Office's 2015 request for student borrower defense relief should have been recognized by Education as an application on behalf of the 7,241 students who attended Everest Institute's Brighton and Chelsea campuses from 2007 to 2015 and should have been adjudicated by the agency. *See* ECF No. 58, at 54-55. Significantly, the Court declined to limit its ruling to a remand to the agency for adjudication, concluding that doing so would be an idle and futile exercise because the questions to be adjudicated—"whether plaintiffs have established their right to borrower defense relief and whether plaintiffs are entitled as a matter of law to full loan discharges"—could only be decided in one way. ECF No. 58, at 63. The Court proceeded to analyze and answer both questions "directly and unequivocally." *Id*.

Reiterating that "remand is inappropriate" as to the question of "whether the borrowers are entitled to relief," the Court held that all class members "have established their right to borrower defense relief." ECF No. 58, at 65. And likewise, emphasizing that it "need not remand this matter to the agency for redetermination" of the measure of relief to which Plaintiffs are entitled, the Court held that all class members are entitled to "full loan discharges." *Id*. at 68.

These determinations were reflected in the Court's order, which declared that "a valid borrower defense to repayment application [was] submitted on behalf of all individuals who took out federal student loans to pay for the cost of attendance for students listed in [the Massachusetts Attorney General's] Exhibit 4," "that plaintiffs have established a right to borrower defense relief

for all [these individuals]," and that they are "entitled to full loan discharges." ECF No. 58, at 71-72. The Court then "remand[ed] this matter to the Secretary to render a reasoned decision not inconsistent with this Order" within "60 days of the issuance of this Order or such further time allowed by the Court." *Id.* at 72.

Defendants sought to preserve the government's ability to obtain meaningful relief on appeal by asking this Court to stay the portion of its June 25 decision that would require effectuating irreversible loan forgiveness (*i.e.*, discharging or refunding loans). Ultimately, adopting an order jointly proposed by the parties, the Court "stay[ed] compliance with the June 25, 2020 Order to September 7, 2020, in full, whether or not an appeal is taken," and, in the event of an appeal, the Court stayed its June 25 order "to the extent that it would require Defendants to discharge loans and issue refunds to class members in connection with the Massachusetts Attorney General's November 30, 2015, letter, Doc No. 33-4, until such time as the appeal is dismissed or resolved." ECF No. 69, at 1. For the sake of clarity, the order further provided:

> The Court's Order vacating Defendants' constructive denial of the Attorney General's application, declaring that members of the class have established a complete borrower defense to repayment, remanding to the agency, and requiring a decision by September 7, 2020 remains in effect. Consistent with the Court's Order, Defendants may not take any action to collect on class members' federal student loans at issue in this case.

*Id*. at 2. On August 24, 2020, Defendants filed a timely notice of appeal. ECF No. 70.

### Defendants' Actions

**1.** On September 4, 2020, Education published a determination concerning the borrower defense applications of all *Vara* class members—that is, all those who borrowed federal student loans on behalf students identified by the Massachusetts Attorney General as having enrolled at Everest Institute's Brighton and Chelsea campuses between 2007 and 2015. *See* Hornig Dec., ¶ 7; *see also id*. ¶ 7(b)-(c) (noting subsequent technical revisions). It was posted online (at

http://studentaid.gofsv/announcements-events/vara) to facilitate public access given the class-wide nature of the determination: Consistent with this Court's June 25 decision, the agency decision reflects the fact that all class members were determined to be entitled to complete borrower defense relief. *See id*. ¶ 7(a).

As discussed below, Education's decision explains that, pursuant to this Court's ruling,[2] "all individuals who borrowed federal student loans to pay the cost of attendance for any of the 7,241 persons named in the Massachusetts Attorney General's exhibit have the right to borrower defense relief under 34 C.F.R. § 685.206(c)(1) (2015)," and "that if these borrowers have not yet had those federal student loans completely discharged based on a successful borrower defense claim, have not yet received a refund of sums already collected, and have not yet received a favorable decision as to a borrower defense application, they are entitled to full loan discharges." ECF No. 73-1 (copy of http://studentaid.gov/announcements-events/vara).

The decision explains that the government is appealing, and that, while the appeals process is ongoing, Education is not required to discharge or refund loan. *Id*. (referencing the August 20 decision). But the decision also details the ways which the agency is proceeding with implementation of the June 25 ruling:

> ED is proceeding in all other respects with the implementation of the district court's June 25 ruling. To that end, ED is identifying all federal student loans associated with enrollment at Everest Institute's Brighton and Everest campuses between 2007 and 2015 by the persons identified in the Massachusetts Attorney General's exhibit. All such loans that are held by ED will remain in forbearance or stopped collection status for the pendency of the government's appeal. Borrowers will not be held responsible for interest that would accrue during the pendency of the appeal. ED is working to identify any of the relevant federal student loans that are held by commercial entities, and is reaching out to those loan holders to request that they take steps to ensure that those loans are afforded the same treatment as the loans held by ED.

---

[2] *See* Hornig Dec., ¶ 7(c) (explaining that links were added to provide access to the Court's June 25 decision and August 20 partial stay order).

ECF No. 73-1. Finally, Education notes that the notice of decision is being made publicly available, is being sent to affected borrowers, and will be updated after the appeals process concludes. *Id*. (The mailing of the decision to class members is discussed below.)

**2.** By September 7, Education also set to work to identify the individual class members. The exhibit supplied by the Massachusetts Attorney General's Office identified 7,241 students who enrolled at Everest Institute's Brighton and Everest campuses between 2007 and 2015. Honig Dec., ¶ 8(a). The exhibit gave no indication of who among them (or among their parents) might have borrowed federal student loans to cover the costs of attendance. After analyzing the information in the exhibit, Education ultimately confirmed 481 duplicative listings. *Id*. ¶ 8(a) (explaining that some students were listed multiple times as a result of updated information, such as address changes).

Beginning with the 6,760 unique students identified by the Massachusetts Attorney General, the Department worked to identify any federal loans associated with these students, including federal loans taken out by parents. *See* Hornig Dec., ¶ 8(b) (explaining that Education identified all Direct and FFEL Loans, including PLUS loans borrowed by parents). Education ultimately identified 6,024 unique borrowers, who had taken out loans for the benefit of 5,639 of these Everest Institute students. *Id*. ¶ 8(b). This included 5,328 borrowers whose federal loans were held exclusively by Education, 180 borrowers with a mix of federal loans held by Education and FFEL loans held by commercial non-federal loan holders, and 516 borrowers with FFEL loans held solely by commercial non-federal loan holders. *Id*.

After confirming the necessary identifying information for each of the 6,024 borrowers, Education oversaw the creation of electronic borrower defense application records in its Borrower Defense case management platform for all but four of the 6,024 individual student loan borrowers

identified. *See* Hornig Dec., ¶ 9 & n.2 (explaining that the Department has been working, and is

continue to work, to confirm all the requisite information for the four outstanding borrowers).[3]

**3.** Based on these individual application records, Education worked to send decision letters

to each of these borrowers, as they are believed to comprise the *Vara* class. The decision letter,

titled "Notice of Decision Regarding Student Loan Relief," is found at Attachment 1 to the Hornig

Declaration. Because it is addressed directly to affected borrowers, it begins by informing them

that the Department believes them to be members of the *Vara* class, and that, as class members,

they have been determined to be entitled to complete borrower defense relief. *See* Hornig Dec.,

¶ 10.[4] The message then substantially mirrors the content of the Notice of Decision that is posted

on the Department's website at http://studentaid.gov/announcements-events/vara, but—given the

form of the communication and the audience—it includes several additional details. *See id.* ¶ 10(a).

The message informs the recipient that "a link to the full text of [this Court's June 25] decision"

can be found at https://studentaid.gov/announcements-events/vara. Hornig Dec., Attachment 1, at

1. It concludes: "After the appeals process concludes, the Department will provide you with an

update as to loan relief. If you have questions about this decision notice, please contact the

Borrower Defense Hotline at 1-855-279-6207." Hornig Dec., Attachment 1, at 2; *see also* Hornig

Dec. ¶ 13 (noting that Education has provided up-to-date information to its call center regarding

---

[3] Through counsel, the Department has reached out to Plaintiffs' counsel for assistance and appreciates their cooperation.

[4] The e-mail begins with the following paragraph:

> You are receiving this notice of decision regarding student loan relief because the U.S. Department of Education believes you to be a class member in a legal action against the Department. A federal district court has ruled that class members are entitled to full relief with regard to the federal student loans they obtained to pay the costs of attending Corinthian Colleges, Inc.'s Everest Institute. As explained below, that ruling is subject to further review by a federal court of appeals.

Hornig Dec., Attachment 1, at 1.

implementation of the Department's *Vara* decision to assist any class members who may call the Hotline).

As of October 30, 2020, the Department, working through a contractor, had successfully e-mailed the decision letter to 4,895 borrowers. Hornig Dec., ¶ 10(b). For those for whom e-mail delivery was unsuccessful or impossible, paper copies are being mailed. *Id.* ¶ 10(c). The Department is nearing completion of this process and 1,066 letters will have been mailed by November 5, 2020.[5] *Id.*

**4.** The Hornig Declaration also describes Education's intensive implementation work, which addresses the substantive concerns animating the Court's August 20 order. For example, the Department has contacted all vendors who service defaulted and non-defaulted federally held Direct or FFEL loans to ensure that these loans remain in forbearance or stop-collection status. Hornig Dec., ¶ 11. Each of the servicers confirmed they had taken the requested actions by October 15, 2020 on any borrowers with loans in their portfolios. *Id.* Likewise for borrowers with commercially held FFEL loans, the Department contacted their non-federal loan holders and asked them to extend the same relief to these borrowers. *Id.* ¶ 12. Each of the non-federal loan services responded to Education's request and confirmed that they had completed the requested actions as of October 27, 2020. *Id.*

---

[5] The Hornig Declaration explains that there are 59 borrowers for whom the agency has created electronic borrower defense application records, but lacks any e-mail or mailing address. The Department, through appellate counsel, is reaching out to the Massachusetts Attorney General's Office for assistance in locating these applicants. Hornig Dec., ¶ 10(c) & n.3.

## Argument

### I.   Defendants have complied with the Court's orders.

Plaintiffs ask the Court to enforce its judgment under Fed. R. Civ. P. 70 and use its equitable authority to sanction Defendants. ECF No. 74, at 18. They claim that Defendants did not issue the required decision by the September 7, 2020, deadline, and the decision that was issued failed to offer adequate reasoning. *Id.* at 11-15. Neither contention has merit.

Plaintiffs are mistaken when they suggest that Defendants "unilaterally decide[] to grant themselves another extension" and cause "unexcused delay." ECF No. 74, at 4. Defendants published the decision on September 4, 2020—three days before the court-imposed deadline. Hornig Dec., ¶ 6(a). On September 8, 2020 (the day after the Labor Day holiday), appellate counsel contacted opposing counsel by email to make certain that they were aware of the notice of decision that had been posted on September 4. At Plaintiffs' request, Defendants subsequently provided this Court with a copy of the notice of decision. *See* ECF Nos. 73, 73-1.

Plaintiffs take issue with the fact that the agency decision appears on Education's website under the heading "Notice of Decision About the *Vara v. DeVos* Case." ECF No. 74, at 14 (quoting ECF No. 73-1), seemingly suggesting that this somehow alters or diminishes the significance of the text that follows. It does not. As a posting on a public website, the heading is intended to readily identify the subject of the agency's decision and the group to whom it applies—members of the *Vara* class.

As described above, Education has worked to identify all affected borrowers (i.e., class members), so that copies of its determination could be distributed to them individually. The decision letter is found at Attachment 1 to the Hornig Declaration, and the heading that appears on that notice—which was prepared *specifically* for receipt by members of the *Vara* class—reads

"Notice of Decision Regarding Student Loan Relief."

In short, Defendants have sought to use context-appropriate language—both in its headings and in the content of the decision issued—to avoid undue confusion regarding the rights of class members and the relief that they can expect to receive at this time, in light of this Court's orders and the government's pending appeal. The decision leaves no doubt that, because of this Court's ruling, *Vara* class members are legally entitled to complete loan forgiveness, before describing the implementation steps that are necessary while appeal is pending.[6]

Oddly, Plaintiffs fault the Defendants for writing a decision that hews closely to this Court's orders—avoiding saying anything extraneous that might be interpreted as diverging from the Court's clear instructions. In writing the notice of decision, Defendants sought make plain that the law—as analyzed and explained by this Court—requires the conclusion that all *Vara* class members are entitled to complete loan relief under the applicable borrower defense regulation. ECF No. 73-1. Indeed, as Plaintiffs acknowledge, the reason for Defendants' decision and actions is, necessarily, the ruling of this Court, including the reasons articulated by this Court. ECF No. 74, at 14.

Nevertheless, Plaintiffs argue that Defendants failed to offer an adequately reasoned decision because the decision does "not state, one way or another, whether Defendants have made a decision to adopt [this Court's] holdings, or on what basis Defendants have adopted or declined to adopt the reasoning of the June 25, 2020 Order." ECF No. 74, at 14. But such language was unnecessary: With regard to the adjudication of plaintiffs' claims, Defendants do not have any

---

[6] *See* ECF No. 73-1 (describing, in addition, implementation measures required, including identifying class members, placing the loans held by the Department in forbearance or stopped-collection status until the appeal is resolved and not holding borrowers responsible for interest during this time period, contacting commercial lenders regarding treatment of FFEL loans).

authority to simply reject the Court's reasoning. The Court instructed Defendants to issue a reasoned decision consistent with its order. ECF No. 58, at 72. The Court's decision and order, in turn, were explicit about the decision that must be reached—both as to the relief that must be afforded to *all* class members and the reasons for this. Indeed, the Court stressed that it was *not* remanding to the agency to opine on these issues. *See id*. at 63-68 (concluding that remanding for the agency's legal analysis would be "inappropriate" because only one conclusion is possible— that class members are entitled to full discharges); *see also id*. at 71-72 (expressly awarding declaratory relief). Defendants proceeded accordingly.[7]

Finally, Plaintiffs seems to suggest that Defendants erred by noting in their decision that they have appealed the Court's order, arguing that "the placement of [the] sentence [regarding the appeal] may suggest that Defendants are refusing to adopt the key holdings" of the Court. ECF No. 74, at 15. Not so. Through such language, Defendants are notifying the borrowers that the matter remains subject to further judicial, which is simply true. To fail to acknowledge the pending appeal would engender significant confusion about the status of this matter. On the other hand, acknowledging the appeal in no way suggests that the government intends to disregard this Court's legal rulings. Undoubtedly, unless and until vacated or reversed, this Court's decision establishes the law applicable here, and Defendants' decision seeks to abide by it fully.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), on which the Plaintiffs rely, does not show that Defendants' decision was not "reasoned." That case involved the rescission of a rule without an adequate explanation; the Supreme Court

---

[7] Plaintiffs also fault Defendants for not including a link to the Court's orders in its decision. ECF No. 74, at 14 n.3. To address this concern and facilitate access, links have been added to both the Court's June 25 decision and August 20 partial stay order. *See* https://studentaid.gov/announcements-events/vara (accessed October 30, 2020); *see also* Hornig Dec. ¶ 7(c).

ordered the agency to explain its decision. *Id.* at 43, 57. In so doing, however, the Supreme Court concluded that the appellate court went too far in requiring the agency to give "'increasingly clear and convincing reasons'" for its actions. *Id.* at 44 (citation omitted). The Supreme Court "reiterated that an agency must cogently explain why it has exercised its discretion in a given manner," *id.* at 48, and ordered the agency to do so on the grounds that "the agency's explanation . . . [was] not sufficient to enable [the court] to conclude that the rescission was the product of reasoned decisionmaking," *id.* at 52. Here, quite unlike order in *State Farm*, this Court's ruling did not leave Defendants with discretion to do anything except precisely what the Court ordered. In any event, all that is required under *State Farm* is that an agency provide the reason it proceeded as it did. By citing this Court's orders, Defendants did that.

*Tourus Records, Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001), also does not support Plaintiffs' request. *Cf.* ECF No. 74, at 13. That case, unlike this one, involved an agency's denial, and the subject document did not "'articulate a satisfactory explanation'" for the agency's action. *Id.* at 737 (quoting *State Farm*, 463 U.S. at 43). The *Tourus* court noted that "'nothing more than a brief statement is necessary'" so long the agency has explained "'why it chose to do what it did.'" *Id.* (quoting Henry J. Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders,* 1969 DUKE L.J. 199, 222); *cf.* ECF No. 74 at 14. In any event, unlike *Tourus*, that minimum requirement has been met here. Moreover, the plaintiff in *Tourus* wanted the agency action vacated, which is not what Plaintiffs ask for here.

## II.  A finding of civil contempt is unwarranted.

"To prove civil contempt, a movant must show that (1) the alleged contemnor had notice of the order, (2) "the order was clear and unambiguous," (3) the alleged contemnor "had the ability to comply with the order," and (4) the alleged contemnor violated the order." *Hawkins v. Dep't of*

*Health & Human Servs. For New Hampshire, Com'r*, 665 F.3d 25, 31 (1st Cir. 2012) (affirming denial of motion arguing that agency violated consent decree) (quoting *United States v. Saccoccia,* 433 F.3d 19, 27 (1st Cir. 2005)). The showing must be by clear and convincing evidence. *Saccocia*, 433 F.3d at 26-27, 31 (reversing finding of civil contempt after concluding that the order at issue did not clearly and ambiguously enjoin the defendants from the challenged action).

As confirmed by the Hornig Declaration, Defendants acted before the September 7, 2020, deadline. Hornig Dec., ¶ 7. And Plaintiffs have not shown by clear and convincing evidence, that the Court's order required Defendants to issue a decision that said more than Defendants did. Even if Plaintiffs believe that Defendants were expected to recite more of the Court's reasoning or engage in some alternate analysis, that was not unambiguously required by the Court's reference to a "reasoned decision." By contrast, the Court's decision was unambiguous about the substance of the decision that must issue from Defendants, and about the Court's express denial of a remand for the kind of substantive analysis that Plaintiffs seek. *See supra* pp.3-4 (summarizing ruling).

Lacking any basis for arguing that Defendants have acted improperly in *Vara*, Plaintiffs express frustration that Defendants did not acquiesce on a class-wide basis following *Williams* and *before* the present litigation commenced. This Court has previously addressed Plaintiffs' concerns. *See, e.g.,* ECF No. 58, 55 n.22 (rejecting Plaintiffs' contention that Defendants have "refused to comply with the [Court's] judgment" as "inaccurate"). Moreover, these complaints have no place in the contempt analysis: "Civil contempt is a forward-looking penalty meant to coerce compliance rather than to punish past noncompliance." *Hawkins*, 665 F.3d at 32 (declining to grant contempt motion brought in 2010 on grounds that nonmovant did not comply with orders in 2004 and 2008).

*Morales-Feliciano v. Parole Bd. Of Com. of Puerto Rico*, 887 F.2d 1 (1st Cir. 1989), on which Plaintiffs rely, does not support a finding of contempt, or impositions of sanctions, here.

That case involved a finding of contempt by a district court where a parole board failed to take any action to provide the substantive relief—providing 35 feet of space for each prisoner to prevent overcrowding in a prison—ordered by a court. 887 F.2d at 4-7. Here, however, Defendants issued a decision within the time period allotted, and they have proceeded with effectuating the unstayed portions of the judgment (addressing borrower notification, forbearance, stop-collection status, etc.). *See* Hornig Decl., ¶¶ 7-12. The First Circuit in *Morales-Feliciano* noted that "substantiality of compliance depends upon the nature of the interest at stake and the degree to which noncompliance affects that interest." *Id.* at 5 (cleaned up). Even accepting Plaintiffs' view, the allegations here do not present the kind of substantial and injurious noncompliance that might support a finding of contempt. Indeed, while Plaintiffs conclude by asserting that "the harm to class members here is serious," ECF No. 74, at 18, they nowhere identify any harm or injury resulting from the alleged inadequacies of the decision issued by the Defendants.[8] Plaintiffs also offer the unsubstantiated claim that "a substantial sanction will be necessary to coerce [Defendants'] compliance." *Id*. Should this Court conclude that some revision of Defendants' decision is required, such a finding is in no sense equivalent to the findings of substantial and grievous noncompliance at issue in *Morales-Feliciano* or *J.L*, and clarification of the Court's

---

[8] Plaintiffs also cite *J.L. v. Cucinelli*, Case No. 18-cv-04914-NC, 2020 WL 2562896 (N.D. Cal. Mar. 27, 2020), but it offer no grounds for the imposition of sanctions here. In that case, the Court granted the government's motion for reconsideration of the Court's order holding an agency in civil contempt after the agency violated a preliminary injunction by removing class members from the United States. *Id.* at *1. To the extent that Plaintiffs wish to use *J.L. v. Cucinelli* to show that sanctions can, under some circumstances, be imposed against the government for violating a court order, the contempt order there is instructive, as it notes that "substantial compliance with a court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply." Case No. 18-cv-04914-NC, 2020 WL 2562895, at *2 (N.D. Cal. Feb. 20, 2020). And, importantly, unlike the plaintiffs in *J.L. v. Cucinelli*, Plaintiffs here have not identified any substantial injury that was caused by the alleged noncompliance.

expectations is all that would be warranted or required.

## Conclusion

As shown by the Hornig Declaration, Attachment 1 to the Hornig Declaration, and ECF No. 73-1, Defendants have proceeded in accordance with this Court's orders, and respectfully ask that Plaintiffs' motion be denied.

Respectfully submitted,

Elisabeth P. DeVos, Secretary of Education, and the United States Department of Education

Andrew E. Lelling
United States Attorney


*/s/ Annapurna Balakrishna*
Annapurna Balakrishna
Assistant United States Attorney
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
Tel.: 617-748-3111
Email: annapurna.balakrishna@usdoj.gov